

**Office of the
Pulaski
County
Sheriff**

Branch Directive D02-0004

**BRANCH DIRECTIVE**

| Subject: CONDITION OF INMATE UPON ADMISSION (GENERAL OVERVIEW) | Effective Date: 09/17/99<br>Revised: 04/01/03<br>10/09/06 |
|---|---|
| Distribution: All Personnel          Reference: N/A | Pages: 03 |
| Responsible Authority: **Chief of Detention** | |

ARKANSAS STDS: See Index

AR. STATUTE: See Index

ACA STANDARDS: See Index

I.  **PURPOSE:**   To establish guidelines for accepting custody of detainees to the Pulaski County Regional Detention Facility in compliance with Arkansas Jail Standards and applicable state and federal laws.

II.  **POLICY:**

   A.   Intake personnel will not accept custody of any person who appears to be in need of immediate medical care due to either serious injury or illness.

   B.   Intake Supervisor will immediately contact both the Intake Medical Staff Member and the Watch Commander.

   C.   When the intake medical personnel determines the person's injuries are too severe to accept, intake personnel will require escorting officers to transport such persons to a local hospital for treatment.

III.  **PROCEDURES:**

   A.   Intake deputies will observe all individuals transported to the facility for confinement purposes for any noticeable injuries, illnesses, emotional problems or severe intoxication that would lead the officer to believe that the person may be in need of immediate medical attention.  Examples of such conditions/behaviors are as follows:

      1.   Unconsciousness or semi-consciousness.





Branch Directive D02-0004

    2.      Noticeable injuries, open wounds or sores that may require bandaging, stitches or splinting.

    3.      Severe intoxication where the individual appears likely to pass out, black-out, vomit, etc.

    4.      Obvious mental disorders where the person appears he/she may become violent or uncontrollable.

B.    An intake deputy shall not knowingly admit any person known to immediately need emergency medical attention;

    1.      The intake deputy shall contact his/her supervisor and the on-duty intake health care worker.

    2.      The intake health care worker shall make a determination as to whether the person should be admitted or transported to an outside health care provider (i.e. hospital) for treatment.

    3.      Should a determination be made that the inmate should be treated for his/her health care condition prior to admission, the on-duty health care worker will consult with the shift supervisor.

C.    The shift supervisor will advise the intake deputy of any decision made concerning the admission of the person to the facility.

    1.      If a person is determined by health care personnel to be medically unacceptable, the intake deputy will advise the escorting officer to transport the person to an area hospital for treatment.

D.    Should the refusal be approved, the intake supervisor will advise the arresting officer to exit the facility and will complete an Official Refusal Report regarding the circumstance surrounding the occurrence.

    1.      The incident report should include, at a minimum, the following information:

        a.    Name of the arresting officer, badge number and agency.
        b.    Reason for refusal.
        c.    Date and time of the incident.
        d.    Name, sex and date of birth of the inmate.
        e.    Name of the supervisor approving the refusal.




2

Branch Directive D02-0004

3.    The intake deputy will forward the Refusal Report through the chain-of-command to the Division Commander for review and maintenance.

E.    Persons who have been deemed medically unacceptable due to a physical or mental condition will not be re-admitted without a written statement from a qualified physician indicating that the inmate has been provided health care treatment and did not require hospitalization.

1.    The intake deputy will require the escorting officer to submit a copy of the medical release prior to accepting custody of the person.

2.    The record will indicate that the person was seen by a hospital physician.

F.    Copies of the medical release will be retained by the intake deputy for submission to the records clerk and the intake health care worker for filing in the person's book-in record and medical record, respectively.

G.    Intake deputies will refer to the intake health care worker for examination of any persons admitted to the facility.

H.    The intake health care worker will be responsible for documenting all health care problems and noticeable injuries concerning any person admitted to the facility on a Medical Receiving Form and for filing this information in the person's medical record.

1.    Medical records are considered confidential information and will only be accessible to approved staff.

IV.    REPEALER:

This policy supersedes and rescinds all previous policies regarding this topic.

_____          __10__/_12__/_06__
        Randy Morgan                          Date
     Chief of Detention

3

Branch Directive D07-0007

**Office of the
Pulaski
County
Sheriff**

**BRANCH DIRECTIVE**

| Subject: USE OF FORCE | Effective Date: **09/01/00** |
| | Revised: **10/09/06** |
| Distribution: All Personnel   Reference: N/A | Pages: **11** |
| Responsible Authority: **Chief of Detention** | |
| ARKANSAS STDS: See Index | |
| AR. STATUTE: See Index | |
| ACA STANDARDS: See Index | |

I.   **PURPOSE:**   To establish departmental policy regarding the lawful and controlled use of force by deputies. Deputies are required to abide by these rules. Any violations to these rules could result in the immediate termination of any employee, to include criminal prosecution.

II.   **POLICY:**   Deputies will use the minimum amount of non-deadly force necessary to maintain the security and control of inmates and to prevent incidents from escalating into an emergency. <u>Deputies will not be allowed to possess or have access to any type of weapon (except O.C. foam) while inside the confines of the facility except during bona fide emergencies approved by the Sheriff or designee.</u> Physical restraining devices will **not** be used by deputies to punish inmate behavior.

III.   **DEFINITIONS:**

    A.   <u>Lawful Violence or Force:</u>

        An aggressive act committed by any jail deputy in the performance of their duties when it is necessary to accomplish any of the objectives listed in **V. Procedures**, A, 1 through 4.

    B.   <u>Non-deadly Force:</u>

        A quality or quantity of force that is neither likely nor intended to cause great bodily harm. Non-deadly force shall be taken to mean the physical strength or skill of one or more deputies, a K-9, the use of a chemical agent, baton, handcuffs, and approved physical restraining devices or other such approved weapons.

1

Branch Directive D07-0007



### C.   Less-Lethal:

A less-lethal force is one, which involves the use of one of the following munitions; bean bags, rubber balls, pellets, or wooden projectiles. These types of munitions are deployed with either a twelve (12) gauge shotgun or thirty-seven (37) mm grenade launcher. Less-lethal also involves the use of the "Stinger" grenade which is comprised of a combination of rubber balls and OC, CS, or CN. Less-lethal munitions are an additional option for controlling violent situations with the Chief of Detention or designee's approval. Although these munitions do not expose offenders involved to as great a risk of death or serious injury; it will not be used at close range or be directed at any area in the "red area." Only staff personnel who have been properly trained and passed a written test on the use and deployment of these munitions will be allowed to deploy the munitions.

### D.   Chemical Agents:

Chemical Agents consist of OC, CN, and CS. Chemical agents are a viable tool available as a less-lethal option for the purpose of crowd / disturbance control as well as a Use of Force option. The Chief of Detention or designee may authorize the use of chemical agents to control an offender or group of offenders who otherwise cannot be controlled.

**Note: The facility ventilation system will need to be shut down in the effected area(s) prior to the deployment of CN, CS or large amounts of OC to prevent cross contamination of areas not involved.**



**Oleoresin Capsicum (OC)** – Carried by deputies to be utilized in accordance with Use of Force Continuum.

**CN** – This compound will be typically used for indoor applications.

**CS** – This compound is highly irritating and in closed in environments is likely to cause potential serious damage to offender medically; it will be generally restricted to outdoor applications.

### E.   Deadly Force:

Force of such a nature that, given the circumstances, is either capable or intended to cause great bodily harm or death. As used here, deadly force would mean that, which is inflicted by firearms.

2

Branch Directive D07-0007

F.   **Approved Weapon:**

A weapon used by a deputy in the performance of their duties that has been approved by the Sheriff or designee.

G.   **Necessary Force:**

The minimum amount and degree of lawful violence sufficient to achieve legitimate objectives as listed in **V. Procedures,** A, 1 through 4.

H.   **Normal Circumstances:**

Circumstances in which the deputy has not been deprived of his/her ability to employ approved methods or weapons.

I.   **Reasonable Grounds:**

The set of facts or circumstances based on reliable, trustworthy information or personal knowledge or observation by a deputy which reasonably shows and would warrant an ordinary person to believe that a crime has been committed and / or that a particular person has committed or is about to commit some offense against the law.

J.   **Physical Strength or Skill:**

Holding, restraining, throwing, pushing, pulling, etc., without use of any weapon or device by a deputy alone or together with other deputies.

K.   **Violent Felonies:**

1.   Capital Murder
2.   First Degree Murder
3.   Second Degree Murder
4.   Manslaughter
5.   First Degree Battery
6.   Second Degree Battery
7.   Aggravated Assault
8.   Terrorist Act
9.   Kidnapping
10.  False Imprisonment (First Degree)
11.  Vehicular Piracy
12.  Permanent Detention or Restraint

3

Branch Directive D07-0007

13.   Rape
14.   Arson
15.   First Degree Escape
16.   Second Degree Escape
17.   Aggravated Robbery
18.   Robbery

## IV.  PROCEDURES:

A.  Force may be used by deputies in the performance of the following duties:

1.  When necessary to preserve the order and security of the jail, prevent the commission of offenses, or prevent suicide or self-inflected injury by inmates.

2.  When making lawful arrests and searches, overcoming physical / verbal resistance of such arrests or searches and preventing escapes from custody.

3.  When in self-defense or the defense of another against unlawful violence to his / her person or property.

4.  When necessary to overcome resistance to enforcing facility rules.

B.  Although the careful use of force is permitted by law and deputies are, in fact, authorized to exercise force under certain circumstances, the unnecessary use of force is contrary to the law and also to the rules of the facility. Any deputy found to have exercised more force than reasonably necessary to control any situation, could be subject to disciplinary action as outlined in the Pulaski County Sheriff's Office Uniform Standards of Conduct Manual, up to and including criminal prosecution.

C.  Use of Force – General Rules:

1.  The amount and degree of force which may be employed in attaining the purpose stated in **V. Procedures,** A. 1 through 4 above will be determined by the surrounding circumstances including, but not limited to:

a.  The nature of the offense.

b.  The behavior of the subject against whom force is to be used.

c.  Actions by third parties who may be present.



4

d.    Surrounding physical conditions of persons present.

e.    The feasibility or availability of alternative actions.

2.    Under no circumstances will the force that is used be greater that is absolutely necessary. <u>In no instance will deadly force be used except in the situations stated in Procedure G, below.</u>

3.    Under normal circumstances, only the methods and instruments listed below may be used to apply force. These methods are listed in order from the least severe to the most drastic. It is the deputy's responsibility to first exhaust every reasonable means of employing the minimum amount of force before escalating to a more severe application of force. This in no way implies a deputy must attempt each step before proceeding on to the next step. The actions of an inmate may require a deputy to start the application of force several steps up the continuum. Therefore, the path taken through the use of force continuum can be different each time. It falls on the deputy to use only that amount of force deemed to be necessary by a reasonable person to subdue the inmate.

a.    *Physical Presence* – the mere presence of a deputy.

b.    *Verbal Commands* – request, direct or command.

c.    *Soft, Empty Hand* – low level compliance procedures, non-threatening, non-violent (minimal chance of injury).

d.    *Aerosol Defense Spray* – when passive restraint techniques have failed and a deputy must use physical force.

e.    *Hands on Contact* – physical contact when OC spray is inappropriate or fails.

f.    *Impact Weapon* – to impede subject's actions when other force fails or is deemed inappropriate.

g.    *Deadly Force* – to stop subject's actions as defined by the deadly force policy.

h.    Each situation may require a different "path" through the force continuum.

Branch Directive D07-0007

   i.    In the same manner a deputy escalates up through the continuum,
         he / she must be able to de-escalate as each situation dictates.

4.    No weapon shall ever be displayed or exhibited as a threat unless its actual
      use in the situation would be proper; however, weapons may be displayed
      and readied for use in situations where it is anticipated that they may be
      actually required.

5.    No deputy shall ever surrender his / her weapon.

6.    No deputy shall, in normal circumstances, use any weapon unless it is
      approved and until he / she have been properly trained in its use. Training
      shall include both the technical, mechanical and physical aspects of the use
      of the weapon and also a knowledge and understanding of the law, the
      rules and any other regulation regarding use of the weapon. The facility
      training coordinator shall maintain and disseminate training bulletins
      concerning approved methods for using impact weapons, restraint devices
      and defense tactics.

7.    No deputy shall in any way physically modify or alter an approved
      weapon.

8.    Only deputies who have completed the departmentally prescribed course
      of instruction on the use of OC spray are authorized to carry the device.
      **(See PCSO – General Policy 05-002, Use of Force / OC Spray,
      Standards of Conduct, Policy and Procedure).**

D.    **Detention Facility Procedures:**

1.    The following guidelines are designed to show deputies that they have a
      number of alternatives or choices in handling violent or potentially violent
      situations. Deputies will move through these procedures in sequence so
      those inmates are given every opportunity to cease their disruptive or
      assaultive activity and cooperate with the deputy (ies). It is understood that
      there will be times in emergency situations that deputies will not have the
      chance to go through the sequential alternatives, such as immediate attack
      upon himself / herself or a third person without warning. In all other
      situations deputies will have time to use the sequential alternatives to
      control the inmate and situation.

6



a.   Uncooperative Inmate: The deputy who encounters an uncooperative inmate (refuses to enter cell, refuses frisk search, refused to be removed from cell, failure to obey a lawful order, etc.) will take the following actions.

   1)   Verbal Persuasion: Attempt to verbally convince the inmate to cooperate.

   2)   Verbal Warning: If verbal persuasion fails, warn the inmate of the consequences of non-cooperation (use of force, SERT Activation (Cell Extraction), and disciplinary charges).

   3)   Show of Force: If time allows and if warnings are not effective, inform the Watch Commander so that he / she may confer with the Captain of Housing & Security on the activation of the SERT to perform a Cell Extraction. If the Captain of Housing & Security is unavailable, the Watch Commander will confer with the Chief of Detention or designee on the need for an SERT Activation. **(See Branch Directive D07-0014, Cell Extractions).**

2.   If at any time in the above process the inmate attempts to physically attack any staff member, visitor and / or other inmate, the following steps shall be taken:

   a.   Back-up: Call for back-up personnel, if not already present.

   b.   Blocks: Block the blows or kicks of the inmate, giving the inmate the opportunity to reconsider and clearly establishing that the inmate is the aggressor.

   c.   Take-downs: If, after the inmate's initial blows and kicks have been blocked, and the inmate persists, the deputy (ies) will attempt to take the inmate down by using a take-down technique designed to gain control over the inmate.

   d.   Blows and Kicks: If the inmate's strength and physical agility are such that the take-down techniques are not effective or if the physical setting renders their use ineffective, only then may the deputy (ies) resort to blows and kicks.

The following blows and kicks are to be avoided unless a deputy's life or the life of another is clearly in danger:

1)     Knuckle blows to the temple.

2)     Base of the hand blows to the nose.

3)     Cupped-hand blows to the ears.

4)     Kicks to the groin or head area.

5)     Blows or gouges to the eyes.

When a deputy resorts to blows or kicks, <u>only</u> the type and number sufficient to bring the inmate under control shall be used. These tactics <u>will not</u> be used to inflict unnecessary or permanent injury but only to temporarily disable and only after other means have failed. **WHEN HE / SHE STOPS, YOU STOP.**

6)     <u>Use of ASP Baton:</u> The ASP baton is for defensive purposes and the same procedures apply to the baton as to the hands and feet. Use the baton to block the inmate's blows or kicks, giving the inmate the opportunity to surrender. Second, use the baton to strike the inmate <u>below the neck</u> and in a manner designed to temporarily disable and gain control, not to cause permanent injury. Only the Special Emergency Response Team members and Transport Deputies are trained and authorized in the use of the ASP baton. The SERT commander will authorize the use of batons.

E.    **Use of Non-Deadly Force:**

1.     Non- deadly force may be used in cases where a deputy must take aggressive physical action to achieve a lawful objective, as stated in **Procedures A., 1 through 4.**

2.     Whenever a deputy finds it necessary to use non-deadly force to achieve a lawful objective, it shall be incumbent upon that deputy to exhaust every reasonable means of employing the <u>least</u> amount of force to affect the purpose before moving to the next, more forceful method. However, nothing in this rule shall be interpreted to mean that a deputy is required to

8

engage in prolonged hand-to-hand combat or struggle rather than resort to a method which will most quickly and safely bring the inmate under control.

3.    Handcuffs may be used as a come-along device.

4.    The side handle baton may be used to subdue a resisting inmate, or in self defense, or in defense of a third party and then only if a lesser means has failed or if circumstances warrant their immediate use.

5.    The straight riot baton may be used as a barricade repelling device in crowd control situations.

F.    **The Use of Deadly Force:**

Deadly force, as used in this rule, shall mean the discharging of a firearm in the direction of a person in order to cause death or great bodily harm. No other form of deadly force is authorized. The use of deadly force by the deputy during the performance of his / her duty is restricted to the following:

1.    When necessary, in the defense of own life or the life of another and all other available means of defense have failed (i.e.; riot situations, etc.).

2.    When necessary to prevent the commission of a violent felony.

**All decisions regarding the use of firearms must be made by the Sheriff, Chief of Detention or their designee. Under no circumstances will firearms be brought into the facility by deputy without authorization from any of the above listed individuals.**

Firearms **shall not** be discharged under the following:

1.    As a warning.

2.    At a person known or believed by the deputy to be under the age of seventeen (17) years unless necessary in the defense of the deputy's life or another person's life and all other reasonable means of defense have failed.

3.    In any misdemeanor case unless in defense of life.

Branch Directive D07-0007

4.    From a moving vehicle or at a moving or fleeing vehicle except when necessary in the defense of any deputy's life or another person's life and all other reasonable means of defense have failed.

5.    To effect the arrest of an individual attempting to escape.

G.    **Use of Force Reports:**

1.    Reporting:

Whenever a deputy uses force to effect the arrest of a suspect, detain an inmate or control an inmate, the deputy will submit a detailed Incident / Use of Force Report outlining the circumstances of the incident and an accurate description of the force used, particularly describing the injuries sustained by the suspect, inmate or deputy. A clear distinction will be made as to whether the injury is visible, a verbal complaint of injury, accidental or pre-existing. The written report referencing the incident report number (if applicable) will be submitted on a memo to the Chief of Detention through the chain of command. For further information on reporting, refer to (**PCSO – General Policy 05-001, Use of Force / Subject Control, Standards of Conduct, Policy and Procedure**).

2.    Review:

The written report will be reviewed at each level of the chain of command up to the Chief of Detention. Each supervisor will review the report and make a written recommendation as to the justification for the use of force and any further action required. These reports must be submitted to the office of the Chief of Detention within two (2) working days. If the injuries sustained by the suspect or deputy are serious (life threatening), the supervisor in charge will notify the Chief of Detention or designee immediately.

3.    Any time any physical force is used against an inmate, the deputy will ensure that the inmate is referred to medical staff for examination.

4.    Any staff member involved in an incident resulting in serious bodily injury or death through the use of deadly force will be placed on administrative leave with pay and referred for psychological counseling at the expense of the department.

10

Branch Directive D07-0007

5.     For further information on Review, refer to (PCSO – General Policy 05-001, Use of Force / Subject, Control Standards of Conduct, Policy and Procedure).

**V.    REPEALER:**

This policy supersedes and rescinds all previous policies regarding this topic.

             _____           __10__/_16__/_06__

               **Randy Morgan**                          Date

              **Chief of Detention**

11

**Branch Directive D10-0001**

**Office of the
Pulaski
County
Sheriff**                              **BRANCH DIRECTIVE**

| | |
|---|---|
| Subject: RESPONSIBLE HEALTH AUTHORITY | Effective Date: **01/01/03**<br>Revised: **10/09/06** |
| Distribution: **All Personnel**    Reference: **D01-0001** | Pages: **02** |
| Responsible Authority: **Chief of Detention** | |
| ARKANSAS STDS: **See Index** | |
| AR. STATUTE: **See Index** | |
| NCCHC: **See Index** | |
| ACA STANDARDS: **See Index** | |

I.     PURPOSE:     To establish authority and responsibility for the operation of the Medical Services Division of the Pulaski County Sheriff's Office Regional Detention Facility.

II.    POLICY:

    A.     The responsible health authority for P.C.R.D.F. is the Medical Director contracted by the Pulaski County Sheriff's Office.

    B.     The responsibility for providing and coordinating all medical services rests with the Pulaski County Sheriff's Office, Chief of Detention.

    C.     The Medical Administrator designated by Pulaski County is responsible for the over all operation of the health service program.

    D.     The Medical Administrator and Medical Director positions will be governed by written job descriptions.

        1.     Both will work in conjunction with the health care team to ensure delivery of all appropriate medical services.

Branch Directive D10-0001

### III.   REPEALER:

This policy supersedes and rescinds all previous policies regarding this topic.

_____
**Randy Morgan**
**Chief of Detention**

__10__/_17__/_06__
Date

2

Branch Directive D10-0002

**Office of the
Pulaski
County
Sheriff**                                   BRANCH DIRECTIVE

| Subject: DETENTION FACILITY HEALTH COORDINATOR | Effective Date: **01/01/03**<br>Revised: **10/09/06** |
|---|---|
| Distribution: **All Personnel**      Reference: **D10-0000** | Pages: **01** |
| Responsible Authority: **Chief of Detention** | |
| ARKANSAS STDS: **See Index**<br><br>AR. STATUTE: **See Index**<br><br>NCCHC: **See Index**<br><br>ACA STANDARDS: **See Index** | |

I.     **POLICY:**

The Health Coordinator shall be responsible for ensuring the Pulaski County
Regional Detention Facility maintains a full time qualified health care staff which
will provide full time health care services 24 hours a day, 7 days a week.

II.    **REPEALER:**

**This policy supersedes and rescinds all previous policies regarding this topic.**

_____                        __10__/_17__/_06__
**Randy Morgan**                                            Date
**Chief of Detention**

1



**Branch Directive D10-0003**

**Office of the
Pulaski
County
Sheriff**                    **BRANCH DIRECTIVE**

| | |
|---|---|
| Subject: MEDICAL AUTONOMY | Effective Date: **01/01/03**<br>Revised: **10/09/06** |
| Distribution: **All Personnel**          Reference: **N/A** | Pages: **02** |
| Responsible Authority: **Chief of Detention** | |
| ARKANSAS STDS: **See Index**<br><br>AR. STATUTE: **See Index**<br><br>NCCHC: **See Index**<br><br>ACA STANDARDS: **See Index** | |

I.    **POLICY:**

    A.    Decisions and actions regarding the health care services provided to inmates are the sole responsibility of qualified health care personnel and are not compromised for security reasons.

    B.    Only qualified health care personnel to include physicians, nurse practitioners, nurses, dentists, mental health professionals, and others who by virtue of their education, credentials, and experience will be permitted by law to evaluate and care for patients.

II.   **PROCEDURE:**

    A.    Judgments regarding an inmate's health care needs will rest with the PCRDF Medical Director, the physician contracted by Pulaski County and licensed to practice in the State of Arkansas.

    B.    Situations which require medical or psychiatric judgment will be the sole responsibility the physician and/or designees to assure that medical autonomy is maintained and that the health care needs of the inmates are met.

    C.    Health care services provided to inmates are the sole responsibility of the qualified health care staff.

        1.    Health care treatment or decisions are not to be made or overruled by Sheriff's Office staff.

1

Branch Directive D10-0003 

D.   Health care personnel are subject to the same security regulations as other jail employees.

E.   Concerns or conflicts that arise between health services and Sheriff's Office staff will be resolved by the Medical Administrator and Chief of PCRDF.

## III.   REPEALER:

This policy supersedes and rescinds all previous policies regarding this topic.

<table>
<tr><td>_____<br>**Randy Morgan**<br>**Chief of Detention**</td><td>__10__/__17__/__06__<br>Date</td></tr>
</table>

2

Branch Directive D10-0004

**Office of the
Pulaski
County
Sheriff**

**BRANCH DIRECTIVE**

| Subject: MEDICAL SERVICES DIVISION POLICY AND PROCEDURES | Effective Date: **01/01/03** Revised: **10/09/06** |
|---|---|
| Distribution: **All Personnel**      Reference: **D10-0000** | Pages: **02** |
| Responsible Authority: **Chief of Detention** | |
| ARKANSAS STDS: **See Index** | |
| AR. STATUTE: **See Index** | |
| NCCHC: **See Index** | |
| ACA STANDARDS: **See Index** | |

I.  **PURPOSE:**   To establish authority and responsibility for the operation of the Medical Services Division of the Pulaski County Sheriff's Office Regional Detention Facility.

II. **POLICY:**    PCRDF will have a Medical Services Division Policy and Procedure Manual approved by the health authority and responsible physician.

The manual will address the NCCHC and ACA standards and provide direction to the medical staff.

Policy and procedure manuals are readily available to staff for reference.

III. **PROCEDURE:**

1.  The Medical Policy and Procedure Manual will be prepared in a consistent uniform manner. Each policy and procedure will include a title, references, standard number and date of origin or revision.

2.  Each Policy and Procedure will be reviewed and approved by the Medical Director, Medical Administrator and the Chief of Detention.

3.  Policies and procedures will be reviewed and revised as necessary.

4.  All policies and procedures will be reviewed on an annual basis.

1

Branch Directive D10-0004  

5.   When the P & P manual is implemented, a front cover sheet with approval signatures will be prepared.

6.   When policy and procedure are individually revised, approval signatures will be found at the bottom of the last page of the revised policy.

7.   The Medical Administrator is responsible for maintaining the P & P Manual and for communicating changes or updates to Medical Staff.

## IV.   REPEALER:

This policy supersedes and rescinds all previous policies regarding this topic.

_____
**Randy Morgan**
**Chief of Detention**

__10__/_17__/_06__
**Date**

2

Branch Directive D10-0005

**Office of the
Pulaski
County
Sheriff**

BRANCH DIRECTIVE

| Subject: COMPREHENSIVE QUALITY IMPROVEMENT PROGRAM | Effective Date: 05/21/04 Revised: 10/09/06 |
|---|---|
| Distribution: **All Personnel**    Reference: **N/A** | Pages: **03** |
| Responsible Authority: **Chief of Detention** | |

ARKANSAS STDS: **See Index**

AR. STATUTE: **See Index**

NCCHC: **See Index**

ACA STANDARDS: **See Index**

I.  **PURPOSE:**   To establish a quality improvement program for the Medical Services Division of the Pulaski County Sheriff's Office Regional Detention Facility.

II.  **POLICY:**

    A.   P.C.R.D.F. has developed a quality improvement program that continuously works toward improvement of the quality of health services provided.

    B.   A Quality Improvement Manual will be developed and maintained within the Medical Department.

III.  **PROCEDURE:**

    A.   The Quality Improvement Program will maintain a Quality Improvement Committee which will meet at least quarterly.

    B.   The Quality Improvement Committee will be chaired by the Medical Administrator or designee.

        1.   Members of the committee will include the Medical director, Medical Administrator, representative of the health care team, and representative of security as appropriate.

1

Branch Directive D10-0005

C.  The Quality Improvement Committee will develop plans and implement procedures to assess and improve the quality of clinical and support processes in an attempt to improve medical outcomes.

D.  Issues discussed by the Quality Improvement Committee include:

    1.  Quality Improvement audit results, identified problems, plans and outcomes.

    2.  Infection Control activities.

    3.  Status of inmate grievances

    4.  Results of Environmental Health and Safety Inspections and Disaster Drills.

    5.  Sentinel events (serious clinical, professional or administrative occurrences)

E.  Minutes of Quality Improvement Committee meetings and reports will be kept on file.

F.  The Quality Improvement Program will maintain an ongoing data collection system that monitors major aspects of health care provided. High-risk, high-volume, problem-prone aspects of healthcare provided will be monitored.

G.  The Quality Improvement Program will include regular chart review by the physician and medical staff.

H.  The Quality Improvement Program will develop audit tools with specific quality indicators where performance can be measured, evaluated and improved upon.

I.  The Program will also maintain an annual Quality Improvement audit calendar to track QI monitoring and evaluation.

J.  Confidentiality:

    1.  All activities and communications relating to quality improvement shall be maintained in a privileged and confidential manner.

    2.  This shall include minutes, monitoring and evaluation activities, inmate complaints and other related quality improvement data and files.

K.  All information generated by or as a result of quality improvement activities shall be marked privileged and confidential and shall be handled with customary confidential practices.

2

Branch Directive D10-0005

## IV.   REPEALER:

This policy supersedes and rescinds all previous policies regarding this topic.

_____          __10__/_17__/_06__
       **Randy Morgan**                         Date
     **Chief of Detention**

3

Branch Directive D10-0006

**Office of the
Pulaski
County
Sheriff**

**BRANCH DIRECTIVE**

| Subject: CLINIC SPACE, EQUIPMENT AND SUPPLIES | Effective Date: **01/01/03**<br>Revised: **10/09/06** |
|---|---|
| Distribution: **All Personnel**       Reference: N/A | Pages: **02** |

Responsible Authority: **Chief of Detention**

ARKANSAS STDS: See Index

AR. STATUTE: See Index

NCCHC: See Index

ACA STANDARDS: See Index

I.    **POLICY:**

   A.    P.C.R.D.F. will have sufficient and suitable space, equipment, and supplies available in order to provide adequate health care.

   B.    Adequate space will be allocated to the medical unit for examination and treatment rooms for medical, dental, and mental health care.

   C.    The space will be large enough to accommodate the necessary equipment and to permit privacy for the inmate.

   D.    All office and medical equipment, instruments, supplies will be provided to ensure the delivery of medical, dental, and psychiatric services.

II.   **PROCEDURE:**

   A.    The Medical Administrator will ensure that adequate space and equipment is available for the delivery of health services.

   B.    Space will be designated as examination and treatment space for medical, dental, and psychiatric services. Private interviewing space, desk, chairs, and lockable files will be made available.

   C.    Space will be designated as administrative space that allows for secure storage of health records and personnel files.

Branch Directive D10-0006

D.    There will be a waiting area for patients which have seats and access to drinking water and toilets during clinical encounters.

E.    Weekly inventories will be conducted to inventory equipment, supplies, medications, syringes, needles, sharps, and will be reordered as needed.

III.   REPEALER:

This policy supersedes and rescinds all previous policies regarding this topic.

_____          __10__/_17__/_06__
**Randy Morgan**                          Date
**Chief of Detention**

2

| | |
|---|---|
| **Office of the**<br>**Pulaski**<br>**County**<br>**Sheriff** | **Branch Directive D10-0007** |

<div align="center">

**BRANCH DIRECTIVE**

</div>

| | |
|---|---|
| Subject: SECURITY STANDARDS FOR MEDICAL PERSONNEL | Effective Date: **01/01/03**<br>Revised: **10/09/06** |
| Distribution: **All Personnel**          Reference: | Pages: **04** |
| Responsible Authority: **Chief of Detention** | |
| ARKANSAS STDS: **See Index**<br><br>AR. STATUTE: **See Index**<br><br>NCCHC: **See Index**<br><br>ACA STANDARDS: **See Index** | |

I.   PURPOSE:    To set forth and define security guidelines for personnel of the Medical Services Division.  These standards provide direction and help promote and maintain a safe and secure working environment.

II.   POLICY:    Due to the special nature of providing health care within a correctional facility, security standards for health care staff have been established which are as stringent as those of all employees of the Regional Detention Facility.

All employees of the Medical Services Division are required to adhere to the Policies and Procedures as defined in the Pulaski County Sheriff's Office STANDARDS OF CONDUCT and the DETENTION BRANCH DIRECTIVES.

Listed in this Procedure are additional security related requirements which are intended to provide general direction but are in no way intended to be an all-inclusive list.

III.   PROCEDURES:

A.   <u>While reporting for duty no employee shall:</u>

1.   Be under the influence of an intoxicant. Intoxicants include alcohol, narcotics, barbiturates, hallucinogenic drugs and central nervous system stimulants.

1

Branch Directive D10-0007

2.   Bring into the institution any article that is not authorized by written directive or prior authorization of jail administration.

3.   Carry any weapon or any article that has potential to be used as a weapon.

4.   · Report to work in clothing which is inappropriate or is not in compliance with the established dress code.

5.   Bring into the institution personal prescribed medication in excess of the amount that is needed to be taken during your time on duty.

    a.   Personal medication will be kept in its original container indicating it was prescribed for you by a physician.

    b.   It may be secured in the member's automobile or in his/her locker in the locker room located next to the Training Division.

B.   **While on duty no employee shall:**

1.   Have conversations with inmates concerning personal matters.

    a.   All conversations with inmates shall be strictly professional.

2.   Use profane or abusive language.

3.   Abuse inmates in any manner or direct inmates to provide direct patient care.

    a.   Inmates are to be used only as custodians in the medical unit area.

4.   Trade, barter, accept a gift from, or present a gift to, an inmate, an inmate's family, or any other person on behalf of an inmate.

5.   Recommend or furnish any advice concerning the legal affairs of any inmate.

6.   Have keys to areas of the institution that are not authorized.

    a.   All authorized keys will be maintained in a secure manner at all times.

7.   Use P. C. R. D. F. property for personal use or gain.

Branch Directive D10-0007

8.     Use physical force on any inmate except, and only to the degree that is reasonably necessary in self defense.

9.     Ignore institutional rule infractions by inmates.

      a.    Employees are expected to complete a written report on any incidents involving an inmate.

      b.    This includes any abusive behavior or language, disrespectful attitude, assaults, and other unusual activities involving an inmate.

10.    Refuse to submit to a personal security search, when required, by authorized security personnel.

11.    Provide medical treatment to inmates without proper security present, if required.

12.    Leave undisposed or improperly secured syringes, needles, glass containers or medical instruments.

      a.    All of these articles will be properly stored to prevent access by inmates.

C.    **No employee shall:**

1.    Take any article or property from P.C.R.D.F. unless authorized in writing.

      a.    Maintain contact of a personal nature with any inmate. Personal contacts include phone calls, cards, letters and other types of written communication.

      b.    All contacts of a personal nature, initiated by an inmate should be reported immediately to security personnel.

2.    Give an inmate the date and/or time of any medical appointments outside the jail.

3.    Answer any inquiries by an inmate, other than medical questions.

      a.    Other inquiries by inmates should be directed to security.

      b.    This includes release dates, housing assignments, etc...

3

Branch Directive D10-0007 

IV.   REPEALER:

This policy supersedes and rescinds all previous policies regarding this topic.

_____

Randy Morgan
Chief of Detention

__10__/_17__/_06__
Date

4

| **Office of the Pulaski County Sheriff** | | **Branch Directive D10-0008** |
|---|---|---|
| | **BRANCH DIRECTIVE** | |

| Subject: ORIENTATION TRAINING FOR HEALTH SERVICES STAFF | Effective Date: **01/01/03** Revised: **10/09/06** |
|---|---|
| Distribution: **All Personnel**        Reference: **N/A** | Pages: **02** |
| Responsible Authority: **Chief of Detention** | |
| ARKANSAS STDS: **See Index** AR. STATUTE: **See Index** NCCHC: **See Index** ACA STANDARDS: **See Index** | |

## I.   PURPOSE:

To establish the baseline training of all new Medical Services Division employees of the Regional Detention Facility.

## II.   POLICY:

A.   Each employee of P.C.R.D.F.  Medical Department will be oriented to the facility, their job duties, and responsibilities at the time of their employment.

B.   Each employee's Orientation Check List will be completed within 90 days of employment and will be kept within each employee's file.

## III.   PROCEDURES:

A.   Each Medical Department employee will complete a formal orientation within 90 days of employment.

B.   New employee orientation will include, but not be limited to...

1.   Tour of the facility
2.   Security and classification procedures
3.   Infection control and OSHA guidelines
4.   Organization of the facility and health services program
5.   Location and content of Policies and Procedures and reference materials

1

Branch Directive D10-0008 

6.  Emergency and disaster procedures
7.  Medication administration training
8.  Organization of the health services program
9.  Health care needs of the inmate population

IV.   REPEALER:

This policy supersedes and rescinds all previous policies regarding this topic.

_____
          Randy Morgan
       Chief of Detention

__10__/_17__/_06__
          Date

2

| Office of the Pulaski County Sheriff | | Branch Directive D10-0009 |
|---|---|---|
| | **BRANCH DIRECTIVE** | |

| Subject: USE OF TOBACCO PRODUCTS | Effective Date: **01/01/03** Revised: **10/09/06** |
|---|---|
| Distribution: **All Personnel**   Reference: **D01-0009** | Pages: **01** |
| Responsible Authority: **Chief of Detention** | |
| ARKANSAS STDS: **See Index** AR. STATUTE: **See Index** NCCHC: **See Index** ACA STANDARDS: **See Index** | |

I.   **PURPOSE:**   To affirm the intent of the Medical Services Division to adhere to the standing Pulaski County Regional Detention Facility Policy regarding smoking and the use of smokeless tobacco.

II.   **POLICY:**   P.C.R.D.F. is a smoke and tobacco free.  Use of tobacco products is only authorized in the designated outside areas of the facility.

Inmates and employees will adhere to the facility directives regarding smoking

III.   **PROCEDURE:**

A.   P.C.R.D.F. and medical unit will under no circumstances allow smoking.

B.   Use of tobacco products is only authorized in the designated outside areas of the facility.

IV.   **REPEALER:**

This policy supersedes and rescinds all previous policies regarding this topic.

---

**Randy Morgan**
**Chief of Detention**

__10__/_17__/_06__
**Date**

1

**Office of the
Pulaski
County
Sheriff**

Branch Directive D10-0010

BRANCH DIRECTIVE

| Subject: EMERGENCY PLAN | | Effective Date: 01/01/03 |
|---|---|---|
| | | Revised: 10/09/06 |
| Distribution: All Personnel | Reference: PCRDF's Emergency Response Plan | Pages: 02 |
| Responsible Authority: Chief of Detention | | |

ARKANSAS STDS: See Index

AR. STATUTE: See Index

NCCHC: See Index

ACA STANDARDS: See Index

I. **PURPOSE:**

To set forth and define the guidelines to be followed in the event of an emergency or a natural disaster involving the Pulaski County Regional Detention Facility.

II. **POLICY:**

A. The Pulaski County Regional Detention Facility Emergency Response Plan will be followed in cases of internal or external disaster.

B. The Medical Department's portion of the Emergency Plan will be practiced at least annually.

III. **PROCEDURES:**

A. All Medical Department staff will follow the Pulaski County Regional Detention Facility's Emergency Response Plan, Branch Directive D11-0001 section L.

B. Medical staff on all shifts must participate in annual disaster drills.

C. Disaster drills will be documented and critiqued for Quality Improvement purposes.

D. In case of injuries, emergency supplies (Disaster Box) will be planned, stored and regularly checked.

E. The Emergency Plan will be part of the initial orientation of medical staff.

1

Branch Directive D10-0010 

IV.   REPEALER:

This policy supersedes and rescinds all previous policies regarding this topic.

_____

Randy Morgan
Chief of Detention

__10__/_17__/_06__.
Date

2

**Office of the
Pulaski
County
Sheriff**

Branch Directive D10-00011

**BRANCH DIRECTIVE**

| Subject: RETENTION OF HEALTH RECORDS | Effective Date: **01/01/03**<br>Revised: **10/09/06** |
|---|---|
| Distribution: **All Personnel**       Reference: **D10-0005** | Pages: **02** |
| Responsible Authority: **Chief of Detention** | |
| ARKANSAS STDS: **See Index**<br><br>AR. STATUTE: **See Index**<br><br>NCCHC: **See Index**<br><br>ACA STANDARDS: **See Index** | |

I.   **PURPOSE:**

   To establish the length of time medical records are retained by the Pulaski County Regional Detention Facility.

II.   **POLICY:**

   A.   P.C.R.D.F. will retain inactive health records for a minimum of 7 years.

   B.   When inmates return to the facility, their health records from previous incarcerations will be reactivated and reviewed by qualified health personnel.

III.   **PROCEDURE:**

   A.   Health records will be retained by the facility after inmate discharge.

   B.   Health records will be kept in the active files for a period of 5 years after the last discharge date.

   C.   Health records which are over 5 years past the last discharge date will be placed in the inactive files.

   D.   Inactive health records will be retained for a minimum of 7 years.

1

Branch Directive D10-00011

E.   If an inmate returns to the facility, the previous health record will be reactivated and reviewed by qualified health personnel.

F.   For requested records, copies may be forwarded to other facilities or outside providers after receiving a signed inmate consent to release the health record.

G.   All copies of health records, portions of health records and/or transfer summaries will be forwarded in sealed envelopes clearly marked as confidential information.

IV.   **REPEALER:**

This policy supersedes and rescinds all previous policies regarding this topic.

_____
**Randy Morgan**
**Chief of Detention**

__10__/_17__/_06__
Date

2



**Branch Directive D10-0012**

**Office of the**
**Pulaski**
**County**
**Sheriff**

**BRANCH DIRECTIVE**

| Subject: EMERGENCY CARE TO FACILITY PERSONNEL AND VISITORS | Effective Date: **01/01/03** Revised: **10/09/06** |
|---|---|
| Distribution: All Personnel         Reference: N/A | Pages: **02** |
| Responsible Authority: **Chief of Detention** | |
| ARKANSAS STDS: See Index | |
| AR. STATUTE: See Index | |
| NCCHC: See Index | |
| ACA STANDARDS: See Index | |

I.  **PURPOSE:**   To set forth and define the guidelines of response for members of the Medical Services Division Emergency Care to Facility  Personnel and Visitors

II.  **POLICY:**

   A.   The P.C.R.D.F. Medical Division's primary function is to provide routine  and emergency medical care to the inmate population.

   B.   However; in cases of injury or medical emergencies involving facility personnel or visitors, emergency care will be provided by the Medical Department's health care staff.

III.  **PROCEDURES:**

   A.   In cases of injury or medical emergency involving facility personnel or visitors, P.C.R.D.F. Medical Department health care staff will respond appropriately.

       1.   The patient will be medically stabilized and if necessary prepared for transport so that continued care can be provided.

Branch Directive D10-0012

IV.   REPEALER:

This policy supersedes and rescinds all previous policies regarding this topic.

_____
**Randy Morgan**
**Chief of Detention**

__10__/_17__/_06__
Date

2



**Branch Directive D10-0013**

**Office of the
Pulaski
County
Sheriff**                    **BRANCH DIRECTIVE**

| Subject: PRIVACY OF CARE | | Effective Date: **01/01/03**<br>Revised: **10/09/06** |
|---|---|---|
| Distribution: All Personnel | Reference: **D10-0000** | Pages: **02** |
| Responsible Authority: **Chief of Detention** | | |
| ARKANSAS STDS: See Index<br><br>AR. STATUTE: See Index<br><br>NCCHC: See Index<br><br>ACA STANDARDS: See Index | | |

I.   **PURPOSE:**   To establish basic rules for inmate privacy during an examination by the Medical Services Division of the Pulaski County Sheriff's Office Regional Detention Facility.

II.  **POLICY:**

   A.   Inmate health care will be provided with consideration for the patient's dignity and privacy.

   B.   Clinical encounters will be conducted in private and not observed by security personnel unless the inmate poses a probable risk to the safety of the health care provider or others.

III. **PROCEDURE:**

   A.   Every effort will be made to provide inmates with visual and auditory privacy during all clinical encounters.

      1.   Including when Security Personnel are required for disruptive inmates.

   B.   A medical staff member of the same gender will be present when undressing is required for physical examination or treatment.

   C.   Clinical encounters will be carried out in an appropriate manner designed to encourage the patient's subsequent use of health services.

1



**Branch Directive D10-0013**

    D.     Medical staff providing care to inmates in the housing units will utilize the Medical Treatment Rooms.

          1.    The Treatment Rooms are out of site of the housing officer, so Medical staff will wear body alarms for safety.

**IV.**   **REPEALER:**

This policy supersedes and rescinds all previous policies regarding this topic.

_____

     **Randy Morgan**
     **Chief of Detention**

            __10__/_17__/_06__
                  Date



| Office of the Pulaski County Sheriff | | Branch Directive D10-0014 |
|---|---|---|

**BRANCH DIRECTIVE**

| Subject: PROCEDURES IN THE EVENT OF AN INMATE DEATH | Effective Date: 01/01/03 Revised: 10/09/06 |
|---|---|
| Distribution: All Personnel          Reference: D11-0005 | Pages: 02 |
| Responsible Authority: Chief of Detention | |

ARKANSAS STDS: See Index

AR. STATUTE: See Index

NCCHC: See Index

ACA STANDARDS: See Index

I.    **PURPOSE:**    To set forth and define guidelines for response to an inmate death at the Pulaski County Regional Detention Facility.

II.   **POLICY:**

    A.    In the event of the death of an inmate, a mortality review is conducted within 30 days of the death.

    B.    The Watch Commander is notified immediately.

    C.    The Watch Commander will notify Investigations who will, in turn notify the coroner and a postmortem examination is requested.

III.  **PROCEDURES:**

    A.    In the event of an inmate death the following will be carried out:

        1.    The Watch Commander will be immediately notified and notification will be carried out according to P.C.R.D.F. Branch Directive D11-0005.

        2.    The Medical Administrator and Medical Director will be notified.

        3.    A postmortem examination will be requested by the Watch Commander.

        4.    A mortality review will be conducted within 30 days.

1

Branch Directive D10-0014 

5. The Chief of Detention will be responsible for designating an individual to notify the next of kin.

6. The Medical Director, the Medical Administrator, and nursing staff will conduct the Mortality Review for the purpose of determining if there was a pattern of symptoms that might have resulted in earlier diagnosis and intervention.

7. The Mortality Review will also consider events immediately surrounding the death to determine if appropriate interventions were carried out.

8. Findings of the Mortality Review Board will be treated as confidential and provided to the Chief of Detention.

IV.    REPEALER:

This policy supersedes and rescinds all previous policies regarding this topic.

_____          __10__/_17__/_06__
        Randy Morgan                              Date
        Chief of Detention

Branch Directive D10-0015

**Office of the
Pulaski
County
Sheriff**                         **BRANCH DIRECTIVE**

| Subject: GRIEVANCE MECHANISM | Effective Date: **01/01/03** Revised: **10/09/06** |
|---|---|
| Distribution: **All Personnel**       Reference: **D05-0001** | Pages: **02** |
| Responsible Authority: **Chief of Detention** | |

ARKANSAS STDS: See Index

AR. STATUTE: See Index

NCCHC: See Index

ACA STANDARDS: See Index

I.    **PURPOSE:**    To set forth and define the guidelines for inmate grievances concerning health care.

II.   **POLICY:**

    A.    P.C.R.D.F. grievance procedure will be used to address inmate complaints about health services.

III.  **PROCEDURES:**

    A.    A formal medical grievance process will be made available to all inmates.

    B.    Each inmate will be advised that complaints regarding health care can be resolved through the grievance process.

    C.    Inmate grievances will be addressed by the Medical Administrator or designee in a timely manner.

        1.    A written response will be given to the inmate within 7 days after receiving the complaint.

    D.    Every effort will be made to immediately resolve the inmate's complaint.

    E.    A copy of the grievance documentation will be filed in a grievance file in the Medical Unit.

1

**Branch Directive D10-0015** 

F.     An Inmate Grievance Log will be maintained to track trends and identify potential problems in the delivery of health services.

G.     Areas identified as potential problems during grievance review will be addressed through corrective action.

## IV.   REPEALER:

**This policy supersedes and rescinds all previous policies regarding this topic.**

_____        \_\_10\_\_/\_17\_\_/\_06\_\_
**Randy Morgan**                   **Date**
**Chief of Detention**



**Branch Directive D10-0016**

**Office of the
Pulaski
County
Sheriff**                    **BRANCH DIRECTIVE**

| Subject: ECTOPARASITE CONTROL | Effective Date: **01/01/03**<br>Revised: **10/09/06** |
|---|---|
| Distribution: **All Personnel**      Reference: **D02-0012** | Pages: **02** |
| Responsible Authority: **Chief of Detention** | |
| ARKANSAS STDS: **See Index**<br><br>AR. STATUTE: **See Index**<br><br>NCCHC: **See Index**<br><br>ACA STANDARDS: **See Index** | |

I.  **POLICY:**

    A.    The Pulaski County Regional Detention Facility treats all inmates for ectoparasites with an over the counter delousing agent called "Liceall" during the inmate's intake process.

    B.    If infestation is found the inmate will be referred to the physician for prescribed delousing lotion.

II. **Definitions:**

    A.    Ectoparasite:

        1.    A parasitic organism that lives on the outside of a host.

III. **Procedure:**

    A.    Inmates will shower with Liceall Shampoo prior to being assigned to the housing unit.

    B.    Prior to treatment, consideration is given to each individual inmate regarding the presence of open wounds, allergies, seizure disorders, pregnancy respiratory ailments, or other conditions which may contraindicate the use of Liceall Shampoo.

1

Branch Directive D10-0016 

C.   Any female that is pregnant or suspected to be pregnant will take a shower using hot water and soap instead of Liceall Shampoo.

D.   For body infestation, a lotion will be ordered by the physician and will be applied to the whole body from the neck down (Not applied to the head and face), and will be left on for a prescribed period before being removed by washing in the shower or bath.

E.   For head and pubic infestations, the prescribed agent is given to the inmate to apply to apply to the affected areas and the inmate is given specific instructions regarding how long the solution is to remain on before rinsing.

F.   When infestation is present:

1.   The inmate's clothing and bedding will be bagged up by the inmate and marked for delousing.

2.   The cell that the inmate was housed in will also be disinfected and the inmate will be issued new clothing and bedding.

3.   The inmate will be instructed to return to the medical unit in 72 hours for a follow up visit.

4.   Physical findings and treatment provided will be documented in the medical record at the time of treatment.

5.   When the inmate is reevaluated at 72 hours the patient's condition and response to treatment will be documented in the medical record.

## IV.   REPEALER:

This policy supersedes and rescinds all previous policies regarding this topic.

_____

**Randy Morgan**
**Chief of Detention**

__10__/_17__/_06__
**Date**





Branch Directive D10-0017

**Office of the
Pulaski
County
Sheriff**                     **BRANCH DIRECTIVE**

| Subject: INFECTION CONTROL PROGRAM | Effective Date: **01/01/03**<br>Revised: **10/09/06** |
|---|---|
| Distribution: **All Personnel**    Reference: **D10-0003** | Pages: **03** |
| Responsible Authority: **Chief of Detention** | |

ARKANSAS STDS: See Index

AR. STATUTE: See Index

NCCHC: See Index

ACA STANDARDS: See Index

I.    **PURPOSE:**    To set forth and define the guidelines for the creation and maintenance of an infection control program within the Regional Detention Facility.

II.   **POLICY:**    The P.C.R.D.F. Medical Unit will develop and maintain an infection control program which:

    A.    Monitors the incidence of infectious and communicable disease among inmates;
    B.    Promotes a safe and healthy environment;
    C.    Prevents the incidence and spread of these diseases;
    D.    Assures that inmates infected with these diseases receive prompt care and treatment;
    E.    And provides for the filing of all reports consistent with local, state, and federal laws and regulations.

        Infection Control will follow the guidelines and recommendations of Centers for Disease and Control, Occupational Health and Safety Administration, and other pertinent information related to infection control.

III.  **PROCEDURES:**

    A.    <u>**Surveillance will include but not limited to:**</u>

        1.    During the intake screening the nurse will observe and assess for signs and symptoms of infectious or communicable diseases.

1

Branch Directive D10-0017 

2.   When an inmate suspected of having an infectious disease will be reported to the responsible physician.

3.   All new inmates will receive a TB skin test or provide evidence of testing and result.

   a.   Each employee will undergo testing annually and results will be documented in the employee's file.

B.   **Reporting:**

1.   During the intake screening the nurse will observe and assess for signs and symptoms of infectious or communicable diseases.

2.   When an inmate suspected of having an infectious disease will be reported to the responsible physician.

3.   All new employees will receive a TB skin test or provide evidence of testing and result.

   a.   Infectious diseases will be reported as required.

4.   The Medical Administrator or designee will assume responsibility for reporting to the appropriate health authority all inmates with reportable infections which may include hepatitis, venereal diseases, or other communicable diseases.

5.   Statistics will be maintained by monthly completion of infectious disease reports.

C.   **Preventative measures:**

1.   An Infection Control Committee will be developed and maintained to monitor infection control practices.

2.   Regular in-services on infection control will be conducted at least annually.

3.   The Medical Staff will reinforce good hygiene with food handlers and Detention staff.



2

Branch Directive D10-0017

4.   All staff will be attentive to good hand washing technique and general universal precautions.

5.   Any condition resulting in the spread of infection will be addressed immediately by the Medical Administrator, the responsible physician, and the Chief of Detention.

6.   All reusable instruments including dental instruments will be chemically disinfected and autoclaved after each use.

7.   All sharps and biohazardous waste will be deposited in appropriate containers and disposed of by the contracted biohazard disposal company.

## IV.   REPEALER:

This policy supersedes and rescinds all previous policies regarding this topic.

---

_____               __10__/_17__/_06__
**Randy Morgan**                              Date
**Chief of Detention**

3



| Office of the Pulaski County Sheriff | **Branch Directive D10-0018** |
|---|---|
| | **BRANCH DIRECTIVE** |

| Subject: DAILY HANDLING OF MEDICAL REQUESTS | Effective Date: **01/01/03** Revised: **10/09/06** |
|---|---|
| Distribution: All Personnel   Reference: **D10-0000, D10-0001** Responsible Authority: **Chief of Detention** | Pages: **02** |
| ARKANSAS STDS: See Index AR. STATUTE: See Index NCCHC: See Index ACA STANDARDS: See Index | |

I.   **POLICY:**

A.   P.C.R.D.F. will ensure that all inmates have the opportunity daily to request medical services that are non-emergent by use of the Sick Call Slip.

B.   Sick Call Slips will be readily available to all inmates and will be collected by qualified health care personnel who will triage, treat, and/or make appropriate health service referrals.

II.   **PROCEDURE:**

A.   P.C.R.D.F. will ensure that all inmates have access to Sick Call Slips.

B.   Sick Call Slips must be completed for all routine medical requests except in the case of an emergency where the inmate will receive immediate medical attention.

C.   Sick Call Slips will be kept confidential.

1.   Completed forms will be collected by health services staff and will be reviewed and triaged on a daily basis.

2.   Qualified health services staff will provide treatment, and/or refer to the RNP, Physician, Dentist, or Psychiatrist where indicated to ensure appropriate treatment is provided.

1

Branch Directive D10-0018 

    D.    Completed sick call slips will be filed in each inmate's medical record after being addressed and after the inmate has been seen and treated.

**III.    REPEALER:**

This policy supersedes and rescinds all previous policies regarding this topic.

_____       \_\_10\_\_/\_17\_\_/\_06\_\_
**Randy Morgan**               Date
**Chief of Detention**

2

PULASKI COUNTY REGIONAL DETENTION CENTER

| MEDICAL INMATE REQUEST FORM |
|---|
| This form is for obtaining information from medical. You may request to review your medical records, ask a general question, check on the status of referred appointment for outside services, mental health or dental. It is not to avoid the sick call process. If you have a medical issue it must still go through the sick call process. Only one issue per request form. |

Inmate Name:                                              Date of Birth:

Barracks:              BI#                                   Date of Request:

Question:

Inmate Signature:

Medical Response:

Medical Signature:

Branch Directive D10-0019

**Office of the
Pulaski
County
Sheriff**

**BRANCH DIRECTIVE**

| Subject: PATIENT TRANSPORT | | Effective Date: **01/01/03**<br>Revised: **10/09/06** |
|---|---|---|
| Distribution: All Personnel | Reference: **D04-0003** | Pages: **02** |
| Responsible Authority: **Chief of Detention** | | |
| ARKANSAS STDS: See Index | | |
| AR. STATUTE: See Index | | |
| NCCHC: See Index | | |
| ACA STANDARDS: See Index | | |

I. **POLICY:**

   A.  Inmates who are to be seen in the medical unit will be transported by detention staff.

   B.  Inmates who are scheduled for outside medical services will be transported to their appointments by detention staff.

   C.  The medical staff will arrange outside provider appointments and communicate dates, times, and location of outside appointments to the transportation officer.

   D.  When transporting, Departmental procedures regulating the time and method of transport will be followed.

II. **PROCEDURE:**

   A.  All inmates who are to be seen by a medical professional within the medical unit or outside the facility will be transported to their appointments by detention staff.

   B.  Detention transport procedures will be followed. However, transports will be conducted with all due regard for maintaining the confidentiality of health information.

   C.  The medical staff will schedule outside appointments and will notify the transport officer of transportation needs.

Branch Directive D10-0019

D.    If difficulties arise when planning transportation to medical appointments, The Medical Administrator and the transportation officer will work together to resolve the issue.

E.    The Health Services Administrator will maintain a log of missed appointments to determine if problems with transportation are impeding inmates' access to medical care.

III.    **REPEALER:**

This policy supersedes and rescinds all previous policies regarding this topic.

_____
**Randy Morgan
Chief of Detention**

__10__/_17__/_06__
Date

2

Branch Directive D10-0020

**Office of the
Pulaski
County
Sheriff**                          **BRANCH DIRECTIVE**

| Subject: NOTIFICATION IN EMERGENCIES | Effective Date: **01/01/03** |
| | Revised: **10/09/06** |
| Distribution: **All Personnel**      Reference: **D11-0005** | Pages: **02** |
| Responsible Authority: **Chief of Detention** | |
| ARKANSAS STDS: See Index | |
| AR. STATUTE: See Index | |
| NCCHC: See Index | |
| ACA STANDARDS: See Index | |

I.   **PURPOSE:**

    A.   To establish the notification responsibility of the Medical Services Division personnel when a medical emergency or death is encountered in the Pulaski County Sheriff's Office Regional Detention Facility.

    B.   Due to the unique nature of the relationship between the Medical Services and Security Divisions of the Detention Facility it is imperative that all personnel understand and adhere to the division of responsibilities in these circumstances.

II.  **POLICY:**

    A.   The On Duty Watch Commander will be notified immediately in any emergency, such as serious illness, (including mental illness), injury, or death (usually by Security Division Personnel.)

    B.   The Medical Services Division personnel will immediately notify the Medical Director and / or Medical Administrator, as appropriate.

    C.   The Watch Commander will render all appropriate assistance to the Medical Services Staff in their efforts to address the medical emergency.

1



**Branch Directive D10-0020**

### III.  PROCEDURE:

A.  The assessment of a serious illness, injury, or death will be made by the medical staff and communicated to the on duty Watch Commander, the Medical Director and the Medical Administrator.

B.  The Medical Services Staff will follow and adhere to the established medical protocols.

C.  The Watch Commander will address the event according to the Pulaski County Regional Detention Facility Branch Directive.

D.  Familial notifications will be made in accordance with appropriate Branch Directives.

### IV.  REPEALER:

This policy supersedes and rescinds all previous policies regarding this topic.

_____

**Randy Morgan**
**Chief of Detention**

\_10\_/\_17\_/\_06\_\_
Date





2



Branch Directive D10-0021

**Office of the
Pulaski
County
Sheriff**

**BRANCH DIRECTIVE**

| Subject: SUICIDE PREVENTION | | Effective Date: **01/01/03**<br>Revised: **02/02/12** |
|---|---|---|
| Distribution: **All Personnel** | Reference: **D01-0004,**<br>**D11-0005** | Pages: **04** |
| Responsible Authority: **Chief of Detention** | | |
| ARKANSAS STDS: **See Index**<br><br>AR. STATUTE: **See Index**<br><br>NCCHC: **See Index**<br><br>ACA STANDARDS: **See Index** | | |

I.  **POLICY:**

    A.    P.C.R.D.F. will have a program for identifying and responding to suicidal individuals.

    B.    Components of the program will include identification, training, assessment, monitoring, housing, referral, communication, intervention, notification, reporting, review, and critical incident debriefing.

    C.    Every effort will be made to prevent suicidal attempts through constant surveillance and vigilant monitoring on the part of all health and detention personnel.

II.  **PROCEDURE:**

    A.    The suicide prevention program will include:

        1.    Identification:

            a.    Initially the receiving screening will be the first opportunity for assessing each inmate's potential for suicide.

                1)    The nurse will ask specific questions regarding current suicidal thoughts, plans, and history of previous attempts.

1

Branch Directive D10-0021



    b.    If an inmate is found to be at risk, the receiving nurse will notify the detention staff and arrange for housing that is appropriate for a suicide watch.

    c.    Inmates who are assessed as being at risk for suicide at a later time by health or detention staff will be reassigned to a housing area that affords suicide watch.

    d.    All inmates who have been identified as a suicide risk will be referred to the Psychiatrist or mental health professional for evaluation at the soonest possible time.

2.    Training:

    a.    Initially all newly hired health care and detention personnel will be trained to recognize verbal and behavioral cues that indicate potential suicide.

        1)    Additional training will be provided annually.

    b.    Personnel will be trained in all aspects of suicide prevention including the knowledge that an inmate is particularly susceptible to becoming suicidal upon admission, after adjudication, upon return from court, following bad news about a family member or significant other, after suffering humiliation, rejection or a loss.

    c.    During training, signs and symptoms which may indicate suicide potential will be reviewed...

        1)    Verbalization of suicidal thoughts and plan

        2)    History of past attempts

        3)    Preoccupation with self harm

        4)    Desire to escape untenable life situation

        5)    Depressed state:  Flat affect, hopeless, helpless, apathetic, emotional, fearful, anxious, low self esteem, loss of appetite, insomnia.

2

     6)     Hallucinations or delusions (false sensory perceptions or fixed beliefs which may lead to suicide attempts)

3.     Assessment:

     a.     Assessments will be conducted by a qualified mental health professional or psychiatrist.

     b.     Upon assessment by a mental health professional, the level of suicide precautions will be ordered.

4.     Monitoring:

     a.     Type of suicide watch:

          1)     15 minute watch:  Consists of 15 minute observations.

5.     Housing:

     a.     P.C.R.D.F. if possible houses suicidal inmates in Medical Units for closer observation.

     b.     Rooms or cells use for suicide watch will be made as suicide proof as possible.

6.     Referrals:

     a.     All inmates identified as suicidal will be evaluated by a mental health professional at the earliest possible time.

7.     Communication:

     a.     Daily communication will be made between health care staff and detention staff regarding the status of any inmate who is on suicide precautions.

8.     Intervention:

     a.     When a suicide attempt is identified, it will be treated as a medical emergency and medical staff will respond immediately.

     b.     As with any medical emergency, the ABCs are of utmost importance.

     c.     Every effort will be made to stabilize and/or resuscitate a Patient who has attempted suicide, while awaiting the arrival of medical transport.

Branch Directive D10-0021

9. Notification:

    a.    All suicide attempts will be reported immediately by the health staff to the Facility Watch Commander and Medical Administrator.

    b.    The Medical Administrator will ensure that the Medical Director is notified.

    c.    The Watch Commander will ensure the appropriate Sheriff's Office personnel are notified.

10. Reporting:

    a.    Health care staff will participate in completing all reporting activities surrounding any suicide or suicide attempt as required by the P.C.R.D.F.

11. Review:

    a.    The Medical Administrator and Medical Director will participate in the review of suicides and attempted suicides at   the request of the Chief of Detention.

12. Critical incident debriefing:

    a.    The Medical Administrator will ensure that a debriefing by mental health professionals is made available to all medical personnel and inmates who have been affected by a suicide or suicide attempt.

## III. REPEALER:

This policy supersedes and rescinds all previous policies regarding this topic.

_____
**Randy Morgan**
**Chief of Detention**

    _02_ _/_02_ _/_12_
Date

Branch Directive D10-0022

**Office of the
Pulaski
County
Sheriff**

**BRANCH DIRECTIVE**

| Subject: FORENSIC INFORMATION | | Effective Date: **01/01/03** |
|---|---|---|
| | | Revised: **10/09/06** |
| Distribution: **All Personnel** | Reference: **N/A** | Pages: **02** |
| Responsible Authority: **Chief of Detention** | | |
| ARKANSAS STDS: **See Index** | | |
| AR. STATUTE: **See Index** | | |
| NCCHC: **See Index** | | |
| ACA STANDARDS: **See Index** | | |

I.   **PURPOSE:**   To establish the parameters of conduct for the Medical Services Division with regard to DNA testing and Body Cavity Searches.

II.   **POLICY:**   The primary role of the P.C.R.D.F. medical staff is to serve the health care needs of the inmate patient.

The medical staff will however assist in the drawing of blood of specified discharging inmates for the Nationwide DNA Data Bank.

III.   **PROCEDURE:**

A.   P.C.R.D.F. medical staff will assist in the drawing of blood for the DNA Data Bank.

B.   Medical staff are prohibited from:

1.   Body cavity searches
2.   Psychological evaluation for the purpose of use in adversarial proceedings
3.   Drawing of blood  for the specific purpose of use in adversarial proceedings

C.   Body cavity searches conducted for security reasons will be:

1.   Conducted at an outside medical facility.

1

Branch Directive D10-0022

IV.    REPEALER:

This policy supersedes and rescinds all previous policies regarding this topic.

_____          __10__/_17__/_06__
    Randy Morgan                              Date
    Chief of Detention

2

Branch Directive D10-0023

**Office of the
Pulaski
County
Sheriff**                          BRANCH DIRECTIVE

| Subject: MEDICAL RESTRAINTS AND THERAPEUTIC SECLUSION | Effective Date: 10/01/98<br>Revised: 01/01/03<br>            10/18/11<br>Previous Number: **10-0004** |
|---|---|
| Distribution: **All Personnel**            Reference: **D10-0004** | Pages: 03 |
| Responsible Authority: **Chief of Detention** | |
| ARKANSAS STDS: See Index | |
| AR. STATUTE: See Index | |
| NCCHC: See Index | |
| ACA STANDARDS: See Index | |

I.    **POLICY:**

   A.    P.C.R.D.F. will use medical restraints or therapeutic seclusion only when the safety and welfare of an inmate cannot be protected by other less restrictive means.

   B.    Medical restraints or therapeutic seclusion may be ordered by qualified physician, but will be applied and removed by trained and qualified -detention personnel.

   C.    Inmates/patients will be monitored every 15 minutes by trained health personnel or qualified health professionals.

   D.    Physician orders, verbal or written will be obtained prior to initiating restraint except in emergency situations.

   E.    Orders for restraint or seclusion should not exceed 24 hours.

II.    **PROCEDURE:**

   A.    Medical restraints and therapeutic seclusion will only be used when the safety and welfare of the inmate cannot be protected by other less restrictive means.

Branch Directive D10-0023

B.   The physician will be contacted by medical staff and informed of the need to seclude or restrain.

    1.   The physician must give an order prior to initiation, except in cases that may result in a state of emergency.

C.   Physician orders will include the purpose and clinical justification for the type of restraint used and length of time for their use.

    1.   The length of time should not exceed 24 hours and should be reevaluated at least every 4 hours.

    2.   Continued use of restraints or seclusion will be based on the patient's clinical condition and observed behavior.

D.   Orders may be written for up to 24 hours.  Restraint or seclusion may be continued only after the Physician has:

    1.   Completed a personal examination of the patient

    2.   Documented the reason for it's continuance in the medical record

    3.   Authorized the continuance by written physician order

E.   Only restraints that would be appropriate for use in the community will be used for medical restraints.

F.   When a patient is placed in medical restraints, qualified or health trained personnel will perform 15 minute checks and will document these checks on the restraint log.

    1.   These checks are done to assure satisfactory respiratory status and ensure that no injuries have occurred.

G.   Every 2 hours at minimum, the patient will be seen by health care staff to…

    1.   Assess circulation, movement and sensation through removal of restraints, one extremity at a time.
    2.   Assess respiratory status
    3.   Assess mental status
    4.   Assess vital signs
    5.   Offer food, water, and toileting



2



Branch Directive D10-0023

H.      Health services staff will not participate in restraint or seclusion for non-medical non-therapeutic reasons.

    1.      However may monitor inmates placed in non-medical or non-therapeutic restraints in order to protect the health and safety of those individuals.

I.      Every effort will be made to minimize the length of time that an inmate must be kept in medical restraint or seclusion.

    1.      Frequent observations and thorough assessments will be used to reach this goal.

III.    REPEALER:

This policy supersedes and rescinds all previous policies regarding this topic.

_____
Randy Morgan
Chief of Detention

__10__ / _18__ / _11__
Date

3

**Branch Directive D10-0024**

**Office of the
Pulaski
County
Sheriff**

**BRANCH DIRECTIVE**

| Subject: ORTHOSES, PROSTHESES AND OTHER AIDS TO IMPAIRMENT | Effective Date: **01/01/03** Revised: **10/09/06** |
|---|---|
| Distribution: **All Personnel**       Reference: **N/A** | Pages: **01** |
| Responsible Authority: **Chief of Detention** | |
| ARKANSAS STDS: **See Index** | |
| AR. STATUTE: **See Index** | |
| NCCHC: **See Index** | |
| ACA STANDARDS: **See Index** | |

I.    **POLICY:**

    A.    Pulaski County Regional Detention Facility will provide medical prostheses and/or dental prostheses to inmates if the physician or dentist determines that the inmate would be adversely affected if the device was not provided.

    B.    Security personnel will also have to approve the device as not a danger to others.

II.    **PROCEDURE:**

    A.    Inmates who may be in need of prostheses or other aids will be identified and referred to the Physician / RNP for evaluation.

    B.    Documentation will be made in the individual's medical record indicating results of the Physician or dental exam and subsequent plan of care.

    C.    Physician recommendations will be reviewed by the Medical Administrator or designee for follow through to expedite and avoid further impairment to the inmate.

III.    **REPEALER:**

This policy supersedes and rescinds all previous policies regarding this topic.

_____    \_\_10\_\_/\_17\_\_/\_06\_\_
**Randy Morgan**                         **Date**
**Chief of Detention**

Branch Directive D10-0025

**Office of the
Pulaski
County
Sheriff**

**BRANCH DIRECTIVE**

| | |
|---|---|
| Subject: **HOSPITAL AND SPECIALIZED AMBULATORY CARE** | Effective Date: **01/01/03**<br>Revised: **10/09/06** |
| Distribution: **All Personnel**          Reference: **N/A** | Pages: **02** |
| Responsible Authority: **Chief of Detention** | |

ARKANSAS STDS: **See Index**

AR. STATUTE: **See Index**

NCCHC: **See Index**

ACA STANDARDS: **See Index**

I.   **POLICY:**

    A.   P.C.R.D.F. will ensure that all levels of care are available to meet the health care needs of the inmate population.

    B.   P.C.R.D.F. will have contracts or letters of agreement with outside hospitals and ambulatory specialty care providers.

    C.   Each provider will meet state licensure requirements.

II.   **PROCEDURE:**

    A.   Contracts will be completed with outside providers with the following addressed:

        1.   Admission / Discharge process
        2.   Financial responsibilities
        3.   Billing process

    B.   Admissions will normally be through the hospital emergency room.

    C.   The nurse will contact the Physician prior to sending a patient to the out- side provider.

    D.   The patient will be monitored until outside emergency staff arrives.

1

Branch Directive D10-0025

E.   The nurse will document the emergency and write a brief summary of the patient's condition and medical history.

    1.   This information will be sealed in an envelope marked confidential and given to the emergency staff.

F.   The nurse will document the condition of the patient, time of departure, and mode of transportation in the inmate's record.

## III.   REPEALER:

This policy supersedes and rescinds all previous policies regarding this topic.

_____
**Randy Morgan**
**Chief of Detention**

__10__/_17__/_06__
Date

2

Branch Directive D10-0026

**Office of the
Pulaski
County
Sheriff**

**BRANCH DIRECTIVE**

| Subject: EMERGENCY SERVICES | Effective Date: 01/01/03<br>Revised: 10/09/06, 08/19/16 |
|---|---|
| Distribution:<br>ALL DETENTION BRANCH PERSONNEL  Reference: | Pages: 2 |

## I.   POLICY

A. The Pulaski County Regional Detention Facility will provide 24 hour emergency health care.

B. Nursing staff will respond to medical emergencies and will have emergency equipment and supplies available at all times.

## II.   PROCEDURE

A. Health care personnel will be oriented to Emergency Services during new employee orientation and will complete refresher training annually.

B. Emergency equipment and supplies will be regularly maintained and will be accessible to health care staff at all times.

C. Nursing staff will respond to all medical emergencies with emergency equipment and supplies.

D. When emergencies occur, the nursing staff member in charge will determine if the patient needs to be transported to the hospital emergency room and will decide whether ambulance transport will be needed.

E. The nursing staff member in charge will notify the On Duty Watch Commander of the situation and will ask him to make arrangements for ambulance transport if needed.

F. The patient will be stabilized and monitored by nursing personnel then transferred to the University of Arkansas for Medical Sciences Hospital after notifying the on call physician.

G. Whenever possible, the physician on call is notified prior to transporting the patient to the hospital.

Branch Directive D10-0026

    1. However, in the event of a life threatening emergency, the patient is sent to the hospital as soon as possible which may require notifying the physician after the patient has been transported.

H. A list of names and phone numbers to be called in the event of an emergency will be available to staff.

## III.   REPEALER

**This policy supersedes and rescinds all previous policies regarding this topic.**

_____

R.M. Sylvester
Chief of Detention

Branch Directive D10-0027

**Office of the
Pulaski
County
Sheriff**

**BRANCH DIRECTIVE**

| | |
|---|---|
| Subject: **DIET** | Effective Date: **01/01/03**<br>Revised: **10/09/06** |
| Distribution: **All Personnel**     Reference: **D02-0001,**<br>**D06-0002** | Pages: **02** |
| Responsible Authority: **Chief of Detention** | |
| ARKANSAS STDS: **See Index** | |
| AR. STATUTE: **See Index** | |
| NCCHC: **See Index** | |
| ACA STANDARDS: **See Index** | |

I.    **POLICY:**

   A.    P.C.R.D.F. will ensure that an adequate diet which incorporates the Recommended Daily Allowances is provided to all inmates.

   B.    Special therapeutic diets will be made available to inmates when ordered by the physician or dentist.

      1.    When special diets are ordered, written instructions will be provided by medical personnel to the dietary staff which will include the type of diet, the duration of the special diet, and special instructions.

   C.    Regular and therapeutic diets will be evaluated by a registered or licensed dietician at least every 6 months or whenever a substantial menu change is made. Copies of the diet menus will be retained by the facility for dietician review.

II.    **PROCEDURE:**

   A.    Adequate regular and special diets will be provided to the inmate population.

   B.    Special therapeutic diets will be ordered by the physician or dentist.

      1.    Orders will be noted on the physician order sheet.
      2.    All orders must be signed by the physician within 48 hours of the special diet request.

Branch Directive D10-0027 

C. Nursing staff will transcribe the order and notify the kitchen staff.

D. The designated kitchen staff will be responsible for...

1. Receiving the diet order
2. Ensuring that nutritional requirements have been met
3. Ensuring that the right patient receives the right diet
4. Ensuring that all regular and therapeutic menus are made available for dietician review.
5. Coordination and maintenance of documentation of kitchen staff training on therapeutic diets

E. All diets will be evaluated by a registered or licensed dietician at least every 6 months.

III. REPEALER:

This policy supersedes and rescinds all previous policies regarding this topic.

_10_ / _17_ / _06_
Date

_____
Randy Morgan
Chief of Detention

2

Branch Directive D10-0028

**Office of the
Pulaski
County
Sheriff**

**BRANCH DIRECTIVE**

| | |
|---|---|
| Subject: ENVIRONMENTAL HEALTH AND SAFETY | Effective Date: **01/01/03** <br> Revised: **10/09/06** |
| Distribution: **All Personnel**      Reference: **D08-0001** | Pages: **02** |

Responsible Authority: **Chief of Detention**

ARKANSAS STDS: **See Index**

AR. STATUTE: **See Index**

NCCHC: **See Index**

ACA STANDARDS: **See Index**

I.   **PURPOSE:**   To set forth and define the guidelines for Environmental Health and Safety within the Medical Services Division of the Pulaski County Sheriff's Office Regional Detention Facility.

II.   **POLICY:**   In order to maintain a safe and sanitary environment for inmates and staff, the Medical Administrator, Medical Director, and Chief of Detention will utilize the P.C.R.D.F. policy and procedure to ensure conformity with applicable rules and regulations pertaining to environmental health and safety.

III.   **PROCEDURES:**

A.   The Medical Administrator will ensure that the Medical Department carries out monthly environmental inspections and follows facility policy and procedure for environmental sanitation written in Branch Directive D08-0001.

B.   Inspection reports and results found will be kept on file in the medical department.

C.   Identified problems will be addressed in Medical Committee, Infection Control Committee, or Quality Improvement Committee meetings.

D.   Unsafe or unsanitary conditions or practices will be addressed and corrective action will be taken.

1

Branch Directive D10-0028

E.   At minimum environmental inspections will include:

   1.   Inmate Housing
   2.   Kitchen
   3.   Laundry
   4.   Housekeeping
   5.   Risk Exposure Areas to include electrical outlets, fire retardant equipment, and barber shops.
   6.   Ventilation systems
   7.   Appropriate personal protective equipment

## IV.   REPEALER:

This policy supersedes and rescinds all previous policies regarding this topic.

_____
Randy Morgan
Chief of Detention

__10__/_17__/_06__
Date

2

Branch Directive D10-0029

**Office of the
Pulaski
County
Sheriff**

**BRANCH DIRECTIVE**

| Subject: KITCHEN SANITATION AND FOOD SERVICE | Effective Date: 01/01/03 Revised: 10/09/06 |
|---|---|
| Distribution: All Personnel          Reference: D06-0001 D08-0001 | Pages: 03 |
| Responsible Authority: **Chief of Detention** | |
| ARKANSAS STDS: See Index | |
| AR. STATUTE: See Index | |
| NCCHC: See Index | |
| ACA STANDARDS: See Index | |

I.   **PURPOSE:**   To set forth and define the guidelines for Kitchen Sanitation and Food Handlers within the Regional Detention Facility.

II.   **POLICY:**   P.C.R.D.F. kitchen, dining area and food storage area will be kept clean and sanitary.

All kitchen workers will be appropriately trained and maintain good health and hygiene.

III.   **PROCEDURES:**

A.   The Classification Officer will contact the Medical Department when an inmate is being assigned to the kitchen.

1.   The Nurse will review the inmate's medical record and notify Classification if a disqualifying medical condition exists.

B.   The Medical Administrator will work with the authority responsible for food services to ensure that inspections are conducted and corrective actions are taken when problem areas are identified.

C.   The kitchen will be inspected at least monthly during the Environmental Health and Safety Inspections.

1.   A copy of inspections will be maintained in the Medical Department.

1

Branch Directive D10-0029

D.   At minimum, the following will be regularly inspected:

    1.   Kitchen and storage areas are to be free of rodents and insects.

    2.   All food, raw and prepared are to be stored in closed containers and are stored off the floor in the appropriate temperature and environmental conditions.

    3.   A sample tray of each meal is kept refrigerated for a minimum of 24 hours.

    4.   Kitchen equipment washing, cleaning, and sanitizing.

    5.   Equipment, ducts, and pipes are clean and free of dirt and food particles.

    6.   Equipment maintenance

    7.   Rotation of stock so the oldest is used first.

    8.   Cleanliness of floor, counter, and cleaning areas.

    9.   Dishwashing equipment, freezers, and refrigerators are equipped with working thermometers and temperatures are checked daily.

    10.  Food is protected from contamination and kept at the appropriate temperature when served.

    11.  Traps and drains are functioning and free of debris.

    12.  Smoking policy prohibiting smoking in the kitchen and all areas where food is stored, prepared, and served.

E.   All inmate kitchen workers will be medically screened prior to beginning work in the food service area.

F.   The Food Service Supervisor will be responsible for monitoring the health and cleanliness of inmate kitchen workers on a daily basis.

    1.   If the Food Service Supervisor detects any physical illness or injury, he / she will have the inmate evaluated by medical staff prior to the inmate working.

2

Branch Directive D10-0029

G.   Inmates who have diarrhea, skin infections, runny noses and other illnesses will not be cleared to work in the food service area.

   1.   Any inmates already assigned to this area who develop any of these conditions will be relieved of their duties until they are medically cleared to return to work.

H.   All civilian or inmate kitchen workers who prepare or serve food will be required to wear hair covers and gloves.

IV.   **REPEALER:**

This policy supersedes and rescinds all previous policies regarding this topic.

_____
**Randy Morgan**
**Chief of Detention**

__10__/_17__/_06__
Date

Branch Directive D10-0030

**Office of the
Pulaski
County
Sheriff**

**BRANCH DIRECTIVE**

| | |
|---|---|
| Subject: EXERCISE | Effective Date: 01/01/03<br>Revised: **10/09/06** |
| Distribution: All Personnel  Reference: **D09-0003** | Pages: 02 |
| Responsible Authority: **Chief of Detention** | |
| ARKANSAS STDS: See Index | |
| AR. STATUTE: See Index | |
| NCCHC: See Index | |
| ACA STANDARDS: See Index | |

I.   **POLICY:**

    A.   P.C.R.D.F. will give all inmates the opportunity to exercise at a minimum 1 hour a day, three times a week.

        1.   Unless security considerations so severe exist that the Division Commander or Branch Chief are forced to curtail it.

    B.   Exercise will be supervised by detention staff and will be structured to allow for large muscle activity.

II.   **PROCEDURE:**

    A.   Inmate exercise will be provided to all inmates at various times throughout the day and will be supervised by the detention staff.

    B.   The only inmates exempt from this requirement are those who are in transit and/or are housed in the facility for one week or less.

1

Branch Directive D10-0030

III.   REPEALER:

This policy supersedes and rescinds all previous policies regarding this topic.

_____
Randy Morgan
Chief of Detention

__10__/_17__/_06__
Date

2

Branch Directive D10-0031

**Office of the
Pulaski
County
Sheriff**

**BRANCH DIRECTIVE**

| | |
|---|---|
| Subject: PERSONAL HYGIENE | Effective Date: 01/01/03<br>Revised: 10/09/06 |
| Distribution: All Personnel          Reference: D02-0012 | Pages: 01 |
| Responsible Authority: **Chief of Detention** | |
| ARKANSAS STDS: See Index | |
| AR. STATUTE: See Index | |
| NCCHC: See Index | |
| ACA STANDARDS: See Index | |

I.   **POLICY:**

    A.   P.C.R.D.F. will give all inmates the opportunity to bathe daily.

    B.   Toiletries will be available to all inmates.

    C.   Haircuts and implements for shaving will be made available to inmates subject to security regulations and mental health considerations.

    D.   Laundry services will be offered at least weekly.

II.   **PROCEDURES:**

    A.   Detention personnel are responsible for ensuring all inmates have the opportunity to bathe and take care of personal hygiene on a daily basis.

    B.   All inmates will have basic personal hygiene items available to them to include soap, comb, soft toothbrush, toothpaste, toilet paper, and sanitary napkins.

III.   **REPEALER:**

This policy supersedes and rescinds all previous policies regarding this topic.

_10__/_17__/_06__
Date

_____
**Randy Morgan
Chief of Detention**

1

Branch Directive D10-0032

**Office of the
Pulaski
County
Sheriff**

**BRANCH DIRECTIVE**

| | |
|---|---|
| Subject: COMMUNICATION ON SPECIAL NEEDS PATIENTS | Effective Date: **01/01/03**<br>Revised: **10/09/06** |
| Distribution: **All Personnel**        Reference: **D10-0006** | Pages: **03** |
| Responsible Authority: **Chief of Detention** | |
| ARKANSAS STDS: See Index | |
| AR. STATUTE: See Index | |
| NCCHC: See Index | |
| ACA STANDARDS: See Index | |

I.   **PURPOSE:**   To aid and ensure communication between Medical Services Division Personnel and the Security Division Personnel with respect to special needs inmates.

II.  **POLICY:**   P.C.R.D.F. Medical Services Division policy requires notification of Sheriff's Office personnel by medical staff whenever an inmate has a significant medical or mental health illness or disability that will affect the inmate's housing or program assignment, imposition of disciplinary action, or transfer to another institution.

A.   In cases of identified special needs patients, consultation will be made with medical personnel before changes or actions are made by Detention personnel.

B.   Medical personnel will notify Detention personnel when an inmate presents as a special needs patient with a significant medical, mental health illness or disability so that the inmate may receive appropriate accommodations.

C.   When communication between Medical and Detention personnel is necessary, for the purpose of this policy, Medical staff will contact the on duty Watch Commander.

III.  **DEFINITIONS:**

A.   Included among (but not limited to) special needs patients are the following:

1

Branch Directive D10-0032 

    1.    The chronically ill
    2.    Inmates with communicable disease
    3.    The physically handicapped
    4.    Pregnant inmates
    5.    Frail or elderly inmates
    6.    The terminally ill
    7.    Inmates with serious or special mental health needs
    8.    The developmentally disabled
    9.    Deaf / Mute

B.    Situations where medical / Detention consultation is required include but are not limited to:

    1.    Housing or bed assignment
    2.    Program assignment
    3.    Medical segregation
    4.    Disciplinary segregation
    5.    Work assignment limitations
    6.    Hospitalized inmates

IV.    PROCEDURE:

A.    During the intake assessment, the intake nurse will assess and determine whether an inmate meets the criteria of a special needs patient.

B.    If an inmate is determined to be a special needs patient, security personnel will be notified to ensure that the inmate is appropriately housed or assigned.

C.    The Medical staff will add the inmate to the Special Needs Chronic Care Clinic to ensure medical follow up will be continuous and ongoing.

    1.    The inmate will be seen by the Physician or Nurse Practitioner at least every 90 days.

D.    At transfer if given appropriate notice, the Medical Department will provide a Medical Transfer Summary detailing the inmate's special needs.

2

Branch Directive D10-0032

V.   REPEALER:

This policy supersedes and rescinds all previous policies regarding this topic.

_____
Randy Morgan
Chief of Detention

\_\_10\_\_/\_17\_\_/\_06\_\_
Date

Branch Directive D10-0033

**Office of the
Pulaski
County
Sheriff**

**BRANCH DIRECTIVE**

| Subject: SPECIAL NEEDS TREATMENT PLANS | Effective Date: **01/01/03**<br>Revised: **10/09/06** |
|---|---|
| Distribution: All Personnel          Reference: D10-0006 | Pages: 02 |
| Responsible Authority: **Chief of Detention**<br>ARKANSAS STDS: See Index<br><br>AR. STATUTE: See Index<br><br>NCCHC: See Index<br><br>ACA STANDARDS: See Index | |

I.    **PURPOSE:**     To ensure appropriate treatment plans are created by the Medical Services Division for any inmate with special needs.

II.   **POLICY:**     At P.C.R.D.F. inmates found to have special needs will have a written treatment plan specifying the particular course of therapy. The Special Needs Treatment Plan will specify type of housing, work assignments, program participation, and medical care that will be provided.

Care for individuals with special needs will be ongoing and will require closer medical supervision and/or multidisciplinary care.

III.  **PROCEDURES:**

A.   Inmates found to have special needs will have a special needs treatment plan developed to meet the individual's needs.

B.   Special needs patients include:

1.   The chronically ill (e.g. asthma, heart disease, diabetes, hypertension, COPD, etc.)
2.   Those with communicable diseases (e.g. TB, HIV)
3.   Frail and/or elderly
4.   The physically handicapped (e.g. amputation, paraplegia)
5.   Those with mental health needs
6.   The developmentally disabled

1

Branch Directive D10-0033 

 7.   The terminally ill

 8.   Pregnant females

C.   During the intake screening the nurse will assess each inmate and determine if they meet the special needs criteria.

D.   If the inmate is determined to have special needs, the nurse will arrange for a follow up evaluation by the physician or nurse practitioner.

 1.   This evaluation will determine where the inmate will be housed, work assignment, program assignment and medical care plan.

E.   Special instructions concerning diet, housing, exercise and other needs will be communicated to the Detention staff.

F.   A written individualized treatment plan will be completed for each special needs patient.

 1.   These will be developed collaboratively between the physician, nurse practitioner, nurses, and mental health staff.

G.   The special needs treatment plan will specify the course of therapy, and roles of each level of provider who will be involved in the patient's care.

 1.   It will also include short and long term goals and plans by which goals will be pursued.

H.   The physician or designee will evaluate all special needs patients on a continuous basis.

 1.   The physician will perform a follow up assessment at least every 90 days.

IV.   REPEALER:

This policy supersedes and rescinds all previous policies regarding this topic.

_____
Randy Morgan
Chief of Detention

__10__/_17__/_06__
Date



2

Branch Directive D10-0034

**Office of the
Pulaski
County
Sheriff**

**BRANCH DIRECTIVE**

| | |
|---|---|
| Subject: HEALTH EVALUATIONS OF INMATES IN SEGREGATION | Effective Date: 01/01/03<br>Revised: 10/09/06 |
| Distribution: All Personnel       Reference: N/A | Pages: 02 |
| Responsible Authority: **Chief of Detention** | |
| ARKANSAS STDS: See Index | |
| AR. STATUTE: See Index | |
| NCCHC: See Index | |
| ACA STANDARDS: See Index | |

I.   **PURPOSE:**    To set forth and define the guidelines for health evaluations of inmates in segregation.

II.   **POLICY:**

    A.   A qualified nurse will conduct medical rounds in Segregation Units 'T', 'U', 'L' and 'C' at least three times each week.

    B.   The purpose of these rounds is to monitor the health status of segregated inmates and to ensure that individuals in segregation have access to health services.

III.   **PROCEDURES:**

    A.   Inmates with obvious health problems will not be placed in segregation until evaluated and approved by qualified health personnel.

    B.   A designated health staff member will conduct medical rounds on segregated patients on Mondays, Wednesdays and Fridays.

    C.   The Classification Officer will supply medical staff with a roster of all inmates assigned to the segregation units.

        1.   The nurse making the rounds will sign next to each inmate's name on the roster and document any pertinent information concerning requests, referrals, or treatments provided.

1

Branch Directive D10-0034

2.   Documentation of these rounds will be kept in the Segregation Rounds Log Book.

D.   Any health request and/or medical action taken will be documented in the inmate's health record.

E.   Routine treatments and delivery of medications that have been ordered by the physician will continue as ordered for any patient who is housed in segregation.

IV.   **REPEALER:**

This policy supersedes and rescinds all previous policies regarding this topic.

_____                          __10__/_17__/_06__.
                                                               **Date**
   **Randy Morgan**
   **Chief of Detention**

2

Branch Directive D10-0035

**Office of the
Pulaski
County
Sheriff**

**BRANCH DIRECTIVE**

| | |
|---|---|
| Subject: SICK CALL PROCEDURES (NON-EMERGENCY) | Effective Date: **10/01/98**<br>Revised: **01/01/03**<br>**10/09/06**<br>Previous Number: **10-0001** |
| Distribution: **All Personnel**      Reference: N/A | Pages: **05** |

Responsible Authority: **Chief of Detention**

ARKANSAS STDS: See Index

AR. STATUTE: **See Index**

NCCHC: **See Index**

ACA STANDARDS: **See Index**

**I.    PURPOSE:**    To provide procedures for adequate and timely response to all inmate requests for health care.

**II.    POLICY:**    In order to provide inmates with an opportunity to communicate their health care needs to qualified medical personnel, a sick call system will be developed and implemented at the jail to ensure that all inmate requests for health care are documented and referred to medical personnel in a timely and efficient manner. Facility officials will ensure that all inmates are afforded the opportunity to communicate their health care requests on daily basis.

**III.    DEFINITIONS:**

   **A.    Health Care:**

   As used throughout this policy, health care will encompass the provision of medical care, mental health care, and dental care to inmates.

   **B.    Sick Call Form:**

   A standard form developed by Medical Services Divisions that inmates and/or staff are required to complete to communicate the medical, mental health and/or dental care needs of either themselves or of persons confined to the facility, respectively.

1

Branch Directive D10-0035 

## IV.   PROCEDURES:

### A.   Routine Sick Call (General Population):

1. A lock/drop box will be provided in each general population housing unit and will be marked "sick call."

2. Inmates desiring to see a health care worker for either a medical, dental or mental health care need will be advised to complete a sick call form (see Attachment #1) and to drop it in the sick call box. Sick call forms can also be used to request participation in counseling programs to be offered at the facility through the health care provider.

3. Deputies will provide assistance to any inmate not able to complete the sick call form.

4. The Medical Services Division will be responsible for coordinating a daily time that health care workers will be required to conduct rounds and pick up all completed sick call forms from the drop/lock boxes.

5. Deputies assigned to general population housing units will ensure that inmates assigned to their units are advised of the daily scheduled time that sick call forms will be picked-up by the Medical Services Division in order to afford them sufficient time to complete their sick call form.

6. The health care worker picking up all completed sick call forms will be responsible for reviewing and for prioritizing all sick call forms. Once this is completed, the health care worker will contact the Watch Commander and advise him/her of all inmates needed to be escorted to the medical area of the facility for examination.

7. The Watch Commander will be responsible for coordinating the escort of all identified inmates to the medical area of the facility at the times designated by the Medical Services Division and for coordinating the return of inmates to their housing units once they have been examined.

8. Copies of all sick call forms will be retained by the Medical Services Division and will be filed in each inmate's confidential medical record to be maintained by Medical Services Division.

2

Branch Directive D10-0035

B.   **Routine Sick Call (Level 3 and 4 Inmates):**

1.   Inmates assigned to Level 3 and 4 housing units will be visited at a minimum of 3 times weekly by a member of the Medical Services Division staff for the purpose of sick call.

2.   The Medical Services Division Administrator will be responsible for coordinating a schedule for sick call services to be provided in these units.

3.   Deputies assigned to Level 3 and 4 housing units will be responsible for informing inmates assigned to their units of the designated times that sick call will be conducted.

4.   The Medical Services Division will be responsible for maintaining documentation of all inmates requesting health care services during their sick call rounds.

C.   **Emergency Sick Call (All Inmates):**

1.   A deputy may refer to health care personnel **any** inmate who they believe may be suffering from an acute emergency medical, dental or mental health care problem **at any time**. All jail deputies will receive training from the Medical Services Division as to the signs/symptoms of various medical, mental health and dental problems for this purpose.

2.   The unit deputy will be responsible for contacting medical personnel to describe the symptoms.

3.   The medical staff will be responsible for determining whether the inmate needs to be seen referred to the physician and for prioritizing the urgency of the same.

4.   Should a decision be made that the inmate needs to be seen immediately, either the health care worker or the deputy will be responsible for notifying the shift supervisor so that arrangements can be made to either escort the inmate to the medical area of the facility for examination or, depending upon the security level of the inmate, admit a health care worker to the housing unit for the purpose of seeing the inmate.

Branch Directive D10-0035 

V.    REPEALER:

This policy supersedes and rescinds all previous policies regarding this topic.

_____                    __10__/_17__/_06__
        Randy Morgan                                        Date
      Chief of Detention

4

Branch Directive D10-0035

PULASKI COUNTY REGIONAL DETENTION CENTER

SICK CALL FORM

Inmates Name:                 Date of Birth:
Barracks:     BI#:           Date of Request:

Complaint:

## NURSING DOCUMENTATION

Subjective:

Objective:            Temp    P    R    B/P

Assessment:

Plan:

Education: Verbal _____    Written _____

Refer: Physician _____ Psychiatrist _____ RNP _____ Dentist_____

Nurses Signature_____ Date:_____ Time: _____

5

Branch Directive D10-0036

**Office of the
Pulaski
County
Sheriff**

**BRANCH DIRECTIVE**

| | |
|---|---|
| Subject: EMERGENCY MEDICAL CARE | Effective Date: **10/01/98**<br>Revised: **01/01/03**<br>**10/09/06**<br>Previous Number: 10-0002 |
| Distribution: **All Personnel**   Reference: D10-0037 | Pages: 04 |

Responsible Authority: **Chief of Detention**

ARKANSAS STDS: **See Index**

AR. STATUTE: **See Index**

NCCHC: **See Index**

ACA STANDARDS: **See Index**

I.   PURPOSE:   To set forth facility staff's role in the provision of emergency health care services to persons confined to the Pulaski County Regional Detention Facility.

II.   POLICY:

A.   In order to ensure that the health care needs of inmates housed at the Pulaski County Regional Detention Facility are met on a continuous basis, the facility will provide for 24-hour emergency medical care services.

B.   First aid kits will also be available within the facility to allow facility personnel to provide any needed services until such a time that health care professionals arrive at the scene.

C.   All deputies will be trained in emergency first aid techniques and in the detection of the signs and symptoms that may suggest a medical emergency.

III.   DEFINITIONS:

A.   <u>Health Care</u>:

As used throughout this policy, health care will encompass the provision of medical care, mental health care, and dental care to inmates.

1

Branch Directive D10-0036 

## IV. PROCEDURES:

### A. Training:

All deputies employed by the Pulaski County Regional Detention Facility will be instructed / trained in the following areas during their first year of employment:

1. **Emergency First Aid and CPR:** During their first year of employment, all deputies will be trained in the areas of emergency first aid and CPR techniques. It will be the responsibility of the facility training coordinator or designee to coordinate and schedule this training. The training will be provided through the contract health care provider and/or during the Basic Jail Standards course.

2. **Detection of Medical Emergencies:** At a minimum, training for deputies to detect medical emergencies will consist of the following:

   a. Signs of unconsciousness or semi-consciousness.

   b. Signs of alcohol or drug intoxication.

   c. Signs of severe bleeding.

   d. Signs/symptoms of serious breathing difficulties.

   e. Signs/symptoms of serious head injury.

   f. Signs of severe burns.

   g. Signs/symptoms of severe pain.

   h. Signs of suicide risk.

   i. Signs/symptoms of pregnancy.

   j. Signs/symptoms of diabetes.

3. All training received by deputies will be documented, maintained and filed as outlined in Pulaski County Detention Facility Policy D01-0004, "Employee Training Standards."

2

Branch Directive D10-0036

B.    **Emergency Medical Care Procedures**:

1.    In the event a deputy should discover or be summoned to respond to a medical emergency, the deputy will immediately contact the medical staff on-duty to request assistance and notify the Watch Commander.

2.    The deputy responding to the medical emergency will be responsible for observing all security precautions prior to providing care to an inmate.

3.    The responding deputy will employ emergency first aid techniques until such a time that medical assistance arrives on the scene.

    a.    The deputy will use universal safety precautions when administering first aid to avoid contamination from any contagious or communicable diseases (see Policy D10-0037, "AIDS/Universal Safety Precautions," for information).

4.    Once medical staff arrives at the scene, the deputy will afford them access to the inmate requiring medical care and will allow the medical personnel to take over all medical care responsibilities.

    a.    **Deputies are not to interfere with any medical care being provided to an inmate by qualified health care professionals.**

5.    Should medical personnel responding to the emergency make the determination that the inmate requires transportation to an outside medical facility for treatment; deputies shall follow the procedures outlined in Pulaski County Regional Detention Facility Policy D04-0003, "Transportation of Inmates for Emergency Health Care."

C.    **Documentation of Medical Emergency**:

1.    All personnel responding to the medical emergency will be required to complete an incident or supplemental report immediately following the medical emergency.

2.    The incident report will, at a minimum, contain the following information:

    a.    Name, DOB, race, sex and intake number of the inmate experiencing the medical emergency.
    b.    Description of the nature of the emergency.
    c.    Any action taken.

3

Branch Directive D10-0036



3.  A copy of the incident report will be forwarded through the chain-of-command to the Captain of Administration.

    a.  The Captain of Administration will be responsible for ensuring that a copy of the incident report is forwarded to health care workers for filing in the inmate's confidential medical records.

D.  <u>Maintenance of First Aid Kits</u>:

1.  A first aid kit will be located in each housing unit and will be available for use by deputies at all times.

    a.  Replacement supplies for the kit will be maintained at the facility

2.  Medical Services Division personnel will be responsible for periodically inspecting the contents of the first aid kit to ensure that all supplies are available.

    a.  Should any shortages exist, they will be replenished by Medical Division personnel.

3.  Deputies shall advise Medical Division personnel anytime the supplies in their first aid kit are low.

V.  **REPEALER:**

This policy supersedes and rescinds all previous policies regarding this topic.

_____
Randy Morgan
Chief of Detention

__10__/_17__/_06__
Date

4

Branch Directive D10-0037

**Office of the**
**Pulaski**
**County**
**Sheriff**

**BRANCH DIRECTIVE**

| Subject: BLOOD BORNE PATHOGENS UNIVERSAL SAFETY PRECAUTIONS | Effective Date: 05/31/00 Revised: 01/01/03 10/09/06 Previous Number: 10-0003 |
|---|---|
| Distribution: All Personnel          Reference: N/A | Pages: 10 |
| Responsible Authority: **Chief of Detention** | |
| ARKANSAS STDS: See Index | |
| AR. STATUTE: See Index | |
| NCCHC: See Index | |
| ACA STANDARDS: See Index | |

I.   **PURPOSE:**

A.   To establish an awareness program whereby facility employees are provided with the latest information concerning AIDS/HIV disease and other blood borne pathogens, and to provide procedures for the handling, testing and housing of individuals with such diseases.

B.   Also, to set forth the standard universal safety precautions to be taken by all employees assigned to the Pulaski County Regional Detention Facility and to set forth a process whereby employees exposed to contaminants can be confidentially tested.

II.   **POLICY:**

A.   In an effort to promote and protect the health, well-being, safety and welfare of inmates and staff of the Pulaski County Regional Detention Facility, staff will ensure, to the extent possible, that reasonable steps are taken to prevent the spread of AIDS/HIV and other blood borne pathogens among inmates and staff.

B.   To this end, the facility will ensure that all staff is provided training and information during their first year of employment relative to AIDS/blood borne pathogens, and the ways in which the disease can be transmitted.

1

Branch Directive D10-0037

C.  Staff will periodically receive information relative to AIDS/blood borne pathogens infections during their course of employment as information becomes available.

D.  As a rule, all staff employed by the facility will be required to follow universal safety precautions in order to prevent the infection and spread of AIDS/blood borne pathogens.

E.  UNDER <u>NO</u> CIRCUMSTANCES WILL ANY INMATE BE SEGREGATED OR TRANSFERRED SOLELY BECAUSE HE OR SHE IS INFECTED WITH A.I.D.S. OR OTHER BLOOD BORNE PATHOGENS.

F.  <u>Any officer found to have revealed that an inmate is HIV infected or has AIDS will be subject to disciplinary action.</u>

III.  DEFINITIONS:

A.  <u>AIDS:</u>

AIDS is a fatal disease with no known cure.  AIDS affects an individual's ability to fight off disease and, therefore, permits the contraction of other diseases and illnesses that can cause serious illness and death.

B.  <u>Asymptomatic:</u>

A person who is infected with HIV, but shows no signs or symptoms with the infection or with AIDS.

C.  <u>Human Immune Virus (HIV):</u>

The virus that causes AIDS.

D.  <u>High Risk Behavior:</u>

Any behavior or activity that may involve the exchange of blood or body fluids. All sexual contact is considered high-risk behavior.

E.  <u>HIV Positive or HIV(+):</u>

A person who is infected with the HIV infection. A person who is HIV positive may be either symptomatic or asymptomatic.

2

Branch Directive D10-0037

F.   **Symptomatic:**

A person who is infected with HIV and has begun or has the physical symptoms associated with AIDS, to include, excessive weigh loss, night sweats, diarrhea, recurrent fevers, and fatigue.

G.   **Universal Precautions:**

All actions required to be taken by the staff to prevent transmitting infections, to include, wearing disposable rubber gloves when handling or coming in contact with blood or body fluids.

H.   **Other Definitions:**

1.   **Blood borne pathogens** – Any disease causing agent (e.g.; germ or virus) transmitted by blood or bodily fluid. (Example: Hepatitis).

2.   **Blood borne disease** – A disease other than HIV/AIDS caused by a blood borne pathogen.

IV.   **PROCEDURES:**

A.   **Training:**

1.   All deputies will receive, during their first year of employment, basic training concerning AIDS/HIV and other blood borne infections; the transmission of these diseases; and, the universal safety precautions necessary to be followed to protect against possible transmission.

2.   The receipt of all training will be documented pursuant to the procedures outlined in Pulaski County Detention Facility Policy D01-0004, "Employee Training Standards."

3.   Medical Services Division will provide deputies with new, up-to-date information relative to AIDS/HIV and other blood borne infections, periodically throughout the course of their employment.

a.   Deputies will sign for receipt of such materials stating that they have read and understood all information provided.

3

Branch Directive D10-0037   

B.   **AIDS Policy Development:**

   1.   The Chief of Detention or designee (in consultation with Medical Services staff) will be responsible for the annual review and revision, if necessary, of this policy.

   2.   Changes may be made to this policy at any time that new information concerning AIDS/HIV and other blood borne diseases is received that may change the scope of the information contained in this policy.

   3.   A copy of this policy will be provided to the Medical Services Division for review any time that changes are made to the same.

   4.   The Medical Services Division will be responsible for approving this policy prior to dissemination of the same to staff.

C.   **Testing of Inmates for HIV/AIDS Infection:**

   1.   The routine testing of newly admitted inmate/detainees for HIV infection or AIDS or other blood borne diseases (e.g.; hepatitis) will be strictly prohibited.

   2.   The Medical Services Division may request an inmate to <u>consent</u> to a test for HIV/AIDS or other blood borne diseases, if he/she feels that the test is necessary for the appropriate treatment of the inmate.

      a.   Testing will <u>not</u> be conducted, however, should the inmate refuse the test.

      b.   (NOTE: The Medical Services Division should have the inmate sign a refusal of treatment form for filing in the inmate's medical record should the inmate refuse to be tested.)

   3.   The Medical Services Division can require an inmate to submit to a test to detect HIV/AIDS or other blood borne diseases should an inmate, deputy or other person be exposed to the inmate's blood or body fluid and it is felt that the exposure poses a threat/risk of transmitting HIV/AIDS or other blood borne diseases.



4

Branch Directive D10-0037

    a.    Should an inmate refuse to be tested, the Commander of Housing & Security may obtain a court order to require the inmate to be tested or the Medical Services Division may make all reasonable attempts to contact the inmate's previous physician to determine the status of the inmate.

4.    Should any inmate request that he/she be tested for HIV/AIDS or other blood borne diseases, the Medical Services Division will arrange for the test to be conducted, pursuant to their health care policies and procedures.

5.    **The laboratory results of any inmate tested for HIV/AIDS or other blood borne diseases will be held strictly confidential and will be filed and maintained in the inmate's confidential medical record only.**

    a.    **Any employee found to have revealed the medical status of any inmate housed at the facility will be subject to disciplinary action.**

    b.    The only exception to this will be in cases where another inmate or officer may have been exposed to an inmate's blood or body fluid and it is felt that the exposure poses a threat/risk of transmitting HIV/AIDS or other blood borne diseases.

    c.    In these cases, the inmate may be tested (see Procedure C, paragraph #3 above) and the Commander of Housing & Security will be responsible for revealing the results of the test to the exposed person.

    d.    The exposed person will be instructed as to the confidentiality of the test result information and will be provided the opportunity to be tested himself/herself for the identified disease.

D.    **Housing of Inmates with HIV/AIDS:**

1.    Inmates who are HIV (+) and asymptomatic will **not** be segregated or transferred from the facility solely because of their condition.

    a.    However, the Chief of Detention or designee may make the determination to segregate or transfer an inmate who is HIV (+) and asymptomatic for any of the following reasons:

Branch Directive D10-0037

1)   To protect the inmate from other inmates (protective custody).

2)   For engaging in violent, sexually assaultive, sexually active, or other high risk behaviors within the facility.

3)   Pending transfer to another facility (the inmate may be placed in segregation).

4)   Upon the recommendation of the Medical Services Division.

2.   Inmates who are symptomatic may be placed on medical segregation status upon the direct recommendation of the Medical Services Division.

3.   An inmate who is HIV (+) and has been recommended for transfer to another facility may be placed on medical segregation status pending transfer to that facility.

4.   Any inmate placed on medical segregation will be given the opportunity to participate, to the extent possible, in regular facility programs and services (e.g., visitation, recreation, etc.).

5.   Inmates who have other blood borne diseases (e.g.; hepatitis) will be housed according to the recommendation of the Medical Services Division.

6.   **Should any employee of the facility be found to be segregating an inmate within the facility solely because the inmate is HIV infected or has AIDS or other blood borne disease, he/she will be subject to disciplinary action.**

B.   **Program Participation for HIV/AIDS Inmates:**

1.   An inmate who is HIV (+), has AIDS or other blood borne diseases, will **not** be denied the same access to programs and services as other inmates housed in the general population at the facility.

2.   The only exception to this will be in cases where the Medical Services Division has determined that an inmate should not participate in a certain program, activity or service due to medical reasons.

6

Branch Directive D10-0037

F.   **Safety Equipment and Universal Safety Precautions:**

1.   The following safety equipment will be readily available for officer's use at the facility:

    a.   Disposable latex or rubber gloves.

    b.   Pocket masks with one-way valves for CPR.

    c.   Disposable paper towels and cleaning supplies.

    d.   Spill Care Kit.

2.   Deputies will be trained in the purpose and use of such equipment and in universal safety precautions during their first year of employment   during first aid training.

3.   Deputies will not wear protective equipment while performing their normal job duties at the facility.

4.   Staff will exercise the following universal safety precautions whenever they come, or expect to come, in contact with blood or body fluids:

    a.   Staff will wear Kevlar, disposable or rubber gloves when handling objects; conducting cell searches; handling inmate laundry; handling disruptive, assaultive, or violent inmates; and/or, when physically required to handle inmates (e.g., during frisk searches);

    b.   Staff will ensure that any area on their body; another individual's body, object or area exposed to blood or body fluids is thoroughly cleansed with warm water and soap.

    c.   Staff will ensure that any cut, sores or breaks in their skin are covered with water-resistant bandages.

    d.   Staff should avoid situations where there is likelihood that they could be punctured with sharp objects, to include knives, razors and needles.

        1)   To this end, staff should ensure that they use a flashlight and mirror if they are entering or searching an area where their sight is obstructed.

7

Branch Directive D10-0037

    e.    Staff will ensure that sharp objects are placed in puncture resistant containers, whenever possible.

    f.    Staff will wear disposable or rubber gloves and will use a disinfectant composed of a solution of bleach and water when cleaning up spills and surfaces exposed to blood or body fluids. (These items are contained in the Spill Care Kit.)

    g.    Staff will place contaminated items in plastic bags or containers and will mark the containers "CONTAMINATED".

    h.    Deputies will use a pocket mask or a pocket mask with a one-way valve when performing CPR on any individual, to include another employee

        1)    (NOTE:  Any deputy refusing to perform CPR on an inmate with the use of a pocket mask will be subject to disciplinary action).

    i.    Disposal of soiled clothing, etc., will be done in accordance with the policies and procedures of the Medical Services Division with respect to disposed of bio-hazardous materials.

G.    **Steps to be Taken Upon Exposure to Blood or Body Fluids:**

    1.    Any staff member exposed to blood or body fluids should immediately wash and cleanse the exposed area with warm water and soap.

        a.    Staff exposed to blood and/or body fluids will be provided the opportunity to schedule an appointment with the Medical Services Division at his/her earliest convenience to discuss the likelihood of transmission.

    2.    Staff will be required to complete an official incident report anytime they have been exposed to blood and/or body fluids of another individual while at the facility.

        a.    If medical attention was provided to the staff member by the Medical Services Division, the staff member will document this on the incident report.

Branch Directive D10-0037

3.   Copies of the incident report will be submitted to the Chief of Detention for review and for necessary distribution, maintenance and filing.

4.   Staff exposed to blood and/or body fluids may request that they be tested for HIV or other infections.

    a.   The results of any such test do not need to be reported to the facility and are considered confidential information.

H.   **Confidentiality:**

1   All staff will be instructed to never reveal any information pertaining to the HIV/AIDS or other medical status of any inmate to any other officer, inmate or individual.

    a.   Any jail staff found to be disclosing such information will be immediately reported to the Sheriff and/or Chief of Detention and may be subject to disciplinary action.

2.   Medical Services personnel may reveal the HIV/AIDS or other health status of an inmate to any of the following individuals or for any of the following reasons:

    a.   To another health care provider who will be responsible for caring or providing services to the inmate/detainee.

    b.   To another individual, with the written permission of the inmate.

    c.   To the Director of Health Services, Arkansas Department of Correction, and to the receiving facility administrator, anytime an inmate is transferred to the Arkansas Department of Correction for housing.

    d.   Pursuant to the mandates of a court order or subpoena for such information.

3.   Should an inmate or other individual inadvertently reveal the HIV/AIDS or other medical status of an inmate to any personnel, the staff member will be required to treat this information as confidential and will not disclose this information to any other individual.

    a.   The disclosure of such information can result in disciplinary action being taken against the employee, up to and including termination.

9

Branch Directive D10-0037

V.   REPEALER:

This policy supersedes and rescinds all previous policies regarding this topic.

_____
   Randy Morgan
   Chief of Detention

__10__/_17__/_06__
      Date

Branch Directive D10-0038

**Office of the
Pulaski
County
Sheriff**

BRANCH DIRECTIVE

| Subject: MEDICAL INVOLVEMENT IN THE USE OF RESTRAINTS | Effective Date: 01/01/03 Revised: 10/09/06 |
|---|---|
| Distribution: All Personnel        Reference: N/A | Pages: 04 |
| Responsible Authority: Chief of Detention | |
| ARKANSAS STDS: See Index | |
| AR. STATUTE: See Index | |
| NCCHC: See Index | |
| ACA STANDARDS: See Index | |

I.  **PURPOSE:**   To set forth strict guidelines for the use of restraints on any inmate:

   A.   For either a medical or psychiatric reason, i.e., when requested by medical staff for the administering of medicines or to draw blood.

   B.   For security purposes, to prevent an inmate from injuring himself, others or damaging property.

II.  **POLICY:**

   A.   In an effort to promote the safety and security of the facility, inmates, staff and public, deputies may temporarily restrain persons confined to the facility using mechanical restraints if they have reason to believe the inmate may pose a threat to him/herself, others or property.

   B.   **Under no circumstances will any employee of the facility utilize restraints to punish or harass any person confined to the facility.**

III.  **PROCEDURES:**

   A.   <u>Training</u>:

   All deputies will be thoroughly trained in the use of all restraining devices available at the facility during their first year of employment

1

Branch Directive D10-0038



B.  **Use of Restraints:**

1.  Deputies may utilize restraints to:

    a.  Restrain inmates following a fight between inmates,
    b.  Prevent an inmate from injuring him/herself,
    c.  Prevent property damage or injury to others.
    d.  In these cases, inmates may be temporarily restrained using either handcuffs, shackles or the restraint chair.

2.  Deputies will contact Medical Services Personnel to examine the inmate(s) immediately after the restraints have been applied and order restored.

    a.  The unit deputy will document on an Incident Report, the type of restraint used and why they were necessary.
    b.  The name of the responding Medical Services Personnel,
    c.  Any injuries noted,
    d.  The treatment rendered,
    e.  Any future housing recommendations and,
    f.  The time period the restraints were on.

3.  Any time that a deputy observes, based on their training, any inmate who appears to pose a threat to him/herself, others or property, and feels that the inmate may need to be restrained will immediately contact the on-duty Watch Commander.

    a.  Both the Watch Commander and Medical Services Personnel will immediately respond to the scene.

4.  Upon arrival, the Watch Commander will be responsible for authorizing the use and the type of restraints that may be used on the inmate.

    a.  Sworn Personnel will provide assistance to the deputy and/or will be responsible for notifying other available security staff to provide assistance.
    b.  Medical Services Personnel will be responsible for examining the inmate(s) who have been restrained and determining whether the restraints are too tight and if the inmate has any injuries.

5.  If the inmate is to be removed from his or her housing unit and transferred to the medical section of the facility or to more secure housing the Watch Commander will ensure the move is accomplished.

2

Branch Directive D10-0038

6.   The Watch Commander will arrange for the appropriate escort of the restrained inmate once a decision has been made to move the inmate to another housing unit of the facility.

7.   The Medical Services Personnel will be responsible for documenting their actions and observations.

   a.   This documentation will be completed expediently and a copy sent to the Watch Commander, for inclusion with the incident documentation.

8.   The inmate(s) may be restrained in accordance with the Restraint Chair and all associated restraint policies.

C.   **Supervision Rounds:**

1.   Deputies assigned to any housing unit where an inmate is being held in restraints will be required to visually observe the inmate at least every 15 minutes and to document that these observations have been made.

2.   The condition of the inmate will also be recorded by the deputy making the observation.

3.   The computerized inmate supervision log will be used for this purpose.

D.   **Medical Examination of Inmates:**

1.   Any inmate who has been physically restrained will be required to be examined by medical staff immediately following the use of the restraints.

2.   In cases where inmates are being restrained for a period of time by the Medical Services Personnel, the Medical Services Personnel will ensure that periodic, regular visual examinations are made of the inmate pursuant to their policies and procedures.

E.   **Reporting Procedures:**

1.   Anytime restraints are used on an inmate, the deputies involved in the incident will be required to immediately complete an incident report regarding the matter for forwarding through the chain of command to the Chief of Detention or designee.

Branch Directive D10-0038

2.  The Chief of Detention or designee will review the reports and conduct a follow-up investigation if deemed necessary.

3.  Copies of all incident reports will be forwarded to the records clerk for filing in the inmate's book-in record and to contract health care workers for filing in the inmate's confidential medical record.

IV.  **REPEALER:**

This policy supersedes and rescinds all previous policies regarding this topic.

_____                         _10_/_17_/_06_
**Randy Morgan**                                        Date
**Chief of Detention**

4

Branch Directive D10-0039

**Office of the
Pulaski
County
Sheriff**

**BRANCH DIRECTIVE**

| | |
|---|---|
| Subject: OTHER HEALTH CARE ISSUES/MEDICAL RECORDS | Effective Date: 10/01/98<br>Revised: 01/01/03<br>10/09/06<br>Previous Number: 10-0005 |
| Distribution: All Personnel          Reference: N/A | Pages: 03 |

Responsible Authority: **Chief of Detention**

ARKANSAS STDS: See Index

AR. STATUTE: See Index

NCCHC: See Index

ACA STANDARDS: See Index

I.   **PURPOSE:**   To set forth general guidelines for the handling of medical records within the facility and for the responsibilities of the Medical Services Division.

II.   **POLICY:**

   A.   In order to provide persons confined to the Pulaski County Regional Detention Facility with their right to receive adequate medical, dental and mental health care treatment, the Medical Services Division will be responsible for the provision of such services on a 24-hour basis.

   B.   The overall provision of such services will be by the Medical Services Division, with limited security staff involvement.

   C.   All facility staff will be provided access to the Medical Services Division policies and procedures and will be provided necessary training concerning their roles as they relate to these policies by the Medical Services Division.

III.   **PROCEDURES:**

   A.   A medical record will be established for all persons confined to the facility.

      1.   All medically related documentation will be maintained in this file.

         a.   See Policy 10-0011 Retention of Records

1

2. The Medical Services Division will be responsible for developing an initial medical file for each person admitted to the facility.

B. All medical records are considered strictly confidential.

1. Only authorized medical personnel and those authorized by the Chief of Detention will have access to these records.

2. At no time will unauthorized facility staff personnel other than Medical Division Personnel be granted access to any medical record.

C. Under special circumstances, outside parties (i.e.: attorneys, court officials, etc.) may request access to an inmate's medical record.

1. Any requests such as these made to any facility staff member will be immediately referred to the Medical Services Division for response pursuant to their policies and procedures.

D. Should any person confined to the facility reveal any medical information concerning themselves to any facility staff members that is considered confidential due to federal state or case law, the staff member will be responsible for respecting the confidentiality of this information and for not advising other staff or persons confined to the facility of the same.

1. The staff member may, however, discuss the information he/she was provided with to a representative of the Medical Services Division.

E. Any staff member of the facility found to be revealing confidential medical information to any other employee (other than contract health care staff) of persons confined in the facility can be subject to disciplinary action, up to and including termination.

F. All facility staff will be responsible for following any directives issued by Medical Services Divisions regarding the treatment and/or necessary precautions needed to be taken when coming in contact with inmates being treated by contract medical care staff for any type of illness (communicable or otherwise).

G. The Medical Services Division will be responsible for making a copy of their policies and procedures available to any facility staff upon request and for developing and delivering any necessary training to facility staff concerning the same.

Branch Directive D10-0039

H.   All training provided will be documented and filed pursuant to the procedures outlined in Policy D01-0004 "Employee Training Standards."

IV.   REPEALER:

This policy supersedes and rescinds all previous policies regarding this topic.

_____
**Randy Morgan**
**Chief of Detention**

__10__/_17__/_06__
Date

3

**Branch Directive D10-0040**

**Office of the
Pulaski
County
Sheriff**                     **BRANCH DIRECTIVE**

| | |
|---|---|
| Subject: ACCOMMODATION OF DISABLED INMATES | Effective Date: **10/01/98**<br>Revised: **01/01/03**<br>**10/09/06**<br>Previous Number: **10-0006** |
| Distribution: **All Personnel**      Reference: N/A | Pages: **05** |
| Responsible Authority: **Chief of Detention** | |
| ARKANSAS STDS: See Index<br><br>AR. STATUTE: See Index<br><br>NCCHC: See Index<br><br>ACA STANDARDS: See Index | |

I.   **PURPOSE:**

   A.   To establish guidelines for the proper housing and handling of inmates in the Pulaski County Regional Detention Facility who have a disability or impairment.

II.   **POLICY:**

   A.   Handicapped inmates are housed in a manner that provides for their safety and security.

   B.   Rooms, cells or housing units used by the handicapped are designed for their use and provide for integration with the general population.

   C.   Appropriate facility programs and activities are accessible to handicapped inmates confined in the facility.

III.   **PROCEDURES:**

   A.   <u>ASSESSMENT OF DISABILITY:</u>

   All inmates will have an individualized assessment of their needs during the admission process as part of their intake medical screening.

1

Branch Directive D10-0040

B.    This assessment will be conducted by the Intake medical staff.

    1.    If the inmate has a disability that affects his/her ability to function within the facility, the Intake medical provider will make note of the individual's infirmity and inform the on-duty Watch Commander of the type of accommodations the inmate requires.

        a.    Wheel Chair
        b.    Cane / Crutches
        c.    Deaf / Mute
        d.    Artificial limbs
        e.    Etc.

    2.    The Watch Commander shall order such accommodations as are reasonable for or to the particular circumstances.

    3.    In determining what constitutes a reasonable accommodation under any particular circumstances, the need for institutional security **will not** be compromised.

    4.    A claim of disability or impairment by an inmate does not require that special privileges be afforded to the inmate.

C.    HOUSING:

    1.    An inmate with mobility impairment or with other special needs should have priority for placement in a cell equipped for handicapped persons.

    2.    If the inmate has a device which is essential to the ability of the inmate to function (such as a wheelchair or crutches), the inmate will retain the device unless security considerations forbid it.

        a.    The device will be returned as soon as security considerations allow.

D.    TRANSPORTATION:

    1.    Inmates who can not board transportation vehicles without assistance shall be transported by contract carriers in vehicles designed to lift and transport mobility impaired persons.

    2.    If such transportation is not available, the inmate shall be transported by car.

Branch Directive D10-0040

E.    <u>VISITATION</u>:

    1.    If an inmate cannot access visitation areas due to mobility impairment, an alternate accessible visitation area will be arranged and should be designed to afford reasonable conditions for visitation.

F.    <u>PROSTHETIC DEVICES</u>:

    1.    Glasses:

        a.    Prescription glasses may be brought to the facility for an inmate by a family member.

            1)    These may be left at the Visitation Booth from which they will be labeled with the inmate's name and unit/room assignment.

            2)    The glasses will be picked up by Inmate Services and taken to the Medical Services Division where medical personnel will authorize the inmate to receive the glasses.

            3)    At this time, Inmate Services personnel will deliver the glasses to the inmate and receipt the delivery.

        b.    Replacement/repairs will be coordinated through Inmate Services with the inmate's family, upon written request by the inmate.

    2.    Hearing Aids:

        a.    These may be left at the Visitation Booth from which they will be labeled with the inmate's name and unit/room assignment.

            1)    The hearing aids and batteries (in a sealed package) will be picked up by Inmate Services and taken to the Medical Services Division where medical personnel will authorize the inmate to receive them.

            2)    At this time, Inmate Services personnel will deliver the hearing aids and batteries to the inmate and receipt the delivery.

        b.    Replacement/repairs will be coordinated through Inmate Services with the inmate's family, upon written request by the inmate.

    3.    Dental Appliances:

Branch Directive D10-0040

a.   Dental appliances may be brought to the facility for an inmate by a
family member.

    1)   These may be left at the Visitation Booth from which they
will be labeled with the inmate's name and unit/room
assignment.

    2)   They will be picked up by Inmate Services and taken to
the Medical Services Division where medical personnel
will authorize the inmate to receive them.

    3)   At this time, Inmate Services personnel will deliver the
appliance to the inmate and receipt the delivery.

b.   Replacement/repairs will be coordinated through Inmate Services
with the inmate's family, upon written request by the inmate.

G.   **OTHER DISABILITY COMPENSATION DEVICES:**

    1.   Deaf / Mute:

        a.   When an inmate is seen in Intake and determined to be hearing
and/or speech impaired, the medical provider will place
notification in the box labeled Inmate Services within the Intake
Sergeant's Office.

        b.   Inmate Services will check the box daily and each inmate listed
will immediately receive the following:

            1)   Writing materials (paper and pencil) to communicate.

            2)   Access to the TTY phone. (during evening and nights, the
Shift Sergeants can access the TTY phone in the Inmate
Services area. )

        c.   Inmate Services will maintain a list of Sheriff's Office Employees
who are capable of American and/or International Sign language
who can be contacted when an inmate arrives who needs this
service.

H.   **NON-ENGLISH SPEAKING INMATES:**

    1.   Inmate Services will maintain a list of Sheriff's Office Employees who
speak a foreign language who can be contacted when an inmate arrives
who does not speak English.

**Branch Directive D10-0040**

I. <u>NEEDS ASSESSMENT UPDATES</u>:

    1.   The needs of these inmates will be assessed, by Inmate Services, at not less than a two week interval during the course of their confinement in the facility.

IV.   **REPEALER:**

This policy supersedes and rescinds all previous policies regarding this topic.

---

**Randy Morgan**
**Chief of Detention**

    _10_/_17_/_06_
    Date

**Office of the
Pulaski
County
Sheriff**                         **BRANCH DIRECTIVE**

| Subject: TRAINING FOR DEPUTIES | Effective Date: **01/01/03** |
| | Revised: **10/09/06** |
| Distribution: All Personnel       Reference: **D10-0002** | Pages: **02** |
| Responsible Authority: **Chief of Detention** | |

ARKANSAS STDS: See Index

AR. STATUTE: See Index

NCCHC: See Index

ACA STANDARDS: See Index

I.    **POLICY:**

    A.    P.C.R.D.F will establish and maintain a health related training program for deputies who work with inmates.

        1.    The program will be approved by the responsible physician in cooperation with Chief of Detention who guides the overall training of deputies.

        2.    Training will be ongoing with each officer trained at least every two years.

II.   **PROCEDURE:**

    A.    The Medical Administrator, the physician, and the Chief of Detention or designee will meet initially and periodically to determine and review the content of deputy health related training.

    B.    The physician is responsible for approving all health related training provided to deputies.

    C.    Training will include but not be limited to:

        1.    Administration of first aid.

            a.    Recognizing the need for emergency care in life-threatening situations.

            b.    Recognizing acute manifestations of chronic illnesses.

1

Branch Directive D10-0042 

c. Recognizing mental or disabling conditions.
d. Suicide prevention.
e. Precautions and procedures with respect to infectious and communicable diseases.
f. Cardiopulmonary resuscitation
g. Methods of obtaining medical assistance and referring of inmates to health professionals.
h. Health related training will be provided by the Medical Department.
i. All training received by deputies will be documented, and maintained as outlined in P.C.R.D.F. policy D01-0004.

## III.   REPEALER:

This policy supersedes and rescinds all previous policies regarding this topic.

_____

**Randy Morgan**
**Chief of Detention**

__10__/_17__/_06__
**Date**



2

Branch Directive D10-0043

**Office of the**
**Pulaski**
**County**
**Sheriff**                                    **BRANCH DIRECTIVE**

| Subject: DETENTION FACILITY HEALTH COORDINATOR | Effective Date: **01/01/03** |
| | Revised: **10/09/06** |
| Distribution: **All Personnel**      Reference: **D10-0000** | Pages: **02** |
| Responsible Authority: **Chief of Detention** | |
| ARKANSAS STDS: **See Index** | |
| AR. STATUTE: **See Index** | |
| NCCHC: **See Index** | |
| ACA STANDARDS: **See Index** | |

**I.      POLICY:**

    A.      P.C.R.D.F. requires that all inmates be informed of the scope of care available and mechanism for accessing health services verbally and in writing.

    B.      Notification will be given to all inmates at the time of admission to the facility, during the medical screening and will be documented on the medical screening form.

**II.     PROCEDURE:**

    A.      Bilingual signs will be posted in the receiving area and in housing units explaining how to access emergency and routine medical care.

    B.      The intake nurse completing the medical screening will verbally inform inmates of available health care and the access process…

        1.      Inmates requesting routine, non-emergent health care will fill out a Sick Call Slip, date and sign it, and return it to health care personnel.

        2.      Inmates have daily access to Sick Call Slips.

            a.      The sick call slips will be received by health care personnel only and will be triaged where each inmate will receive the appropriate level of health care.

1

Branch Directive D10-0043 

C.   P.C.R.D.F. will provide a list of bilingual staff who may be called upon to assist in informational exchange between inmates and medical personnel.

## III.   REPEALER:

This policy supersedes and rescinds all previous policies regarding this topic.

_____
**Randy Morgan**
**Chief of Detention**

__10__/_17__/_06__
Date



2

Branch Directive D10-0044

**Office of the**
**Pulaski**
**County**
**Sheriff**                      **BRANCH DIRECTIVE**

| | |
|---|---|
| Subject: EMERGENCY SERVICES | Effective Date: **01/01/03** <br> Revised: **10/09/06** |
| Distribution: **All Personnel**      Reference: D10-0002 | Pages: **02** |
| Responsible Authority: **Chief of Detention** | |

ARKANSAS STDS: **See Index**

AR. STATUTE: **See Index**

NCCHC: **See Index**

ACA STANDARDS: **See Index**

I.   POLICY:

    A.   P.C.R.D.F. will provide 24 hour emergency health care.

    B.   Nursing staff will respond to medical emergencies and will have emergency equipment and supplies available at all times.

II.   PROCEDURE:

    A.   Health care personnel will be oriented to Emergency Services during new employee orientation and will complete refresher training annually.

    B.   Emergency equipment and supplies will be regularly maintained and will be accessible to health care staff at all times.

    C.   Nursing staff will respond to all medical emergencies with emergency equipment and supplies.

    D.   When emergencies occur, the nursing staff member in charge will determine if the patient needs to be transported to the hospital emergency room and will decide whether ambulance transport will be needed.

    E.   The nursing staff member in charge will notify the Jail Shift Commander of the situation and will ask him to make arrangements for ambulance transport if needed.

1

Branch Directive D10-0044 

F.   The patient will be stabilized and monitored by nursing personnel then transferred to South West Hospital after notifying the on call physician.

G.   Whenever possible, the physician on call is notified prior to transporting the patient to the hospital.

    1.   However, in the event of a life threatening emergency, the patient is sent to the hospital as soon as possible which may require notifying the physician after the patient has been transported.

H.   A list of names and phone numbers to be called in the event of an emergency will be available to staff.

## III.   REPEALER:

This policy supersedes and rescinds all previous policies regarding this topic.

_____

**Randy Morgan**
**Chief of Detention**

__10__/_17__/_06__
Date

2



**Branch Directive D10-0045**

**Office of the
Pulaski
County
Sheriff**

**BRANCH DIRECTIVE**

| Subject: PATIENT TRANSPORT | | Effective Date: **01/01/03**<br>Revised: **10/09/06** |
|---|---|---|
| Distribution: **All Personnel** | Reference: **D04-0003** | Pages: **02** |
| Responsible Authority: **Chief of Detention** | | |
| ARKANSAS STDS: **See Index** | | |
| AR. STATUTE: **See Index** | | |
| NCCHC: **See Index** | | |
| ACA STANDARDS: **See Index** | | |

I.  **POLICY:**

   A.  Inmates who are to be seen in the medical unit will be transported by detention staff.
   B.  Inmates who are scheduled for outside medical services will be transported to their appointments by detention staff.
   C.  The medical staff will arrange outside provider appointments and communicate dates, times, and location of outside appointments to the transportation officer.
   D.  When transporting, Departmental procedures regulating the time and method of transport will be followed.

II.  **PROCEDURE:**

   A.  All inmates who are to be seen by a medical professional within the medical unit or outside the facility will be transported to their appointments by detention staff.

   B.  Correctional transport procedures will be followed. However, transports will be conducted with all due regard for maintaining the confidentiality of health information.

   C.  The medical staff will schedule outside appointments and will notify the transport officer of transportation needs.

1

Branch Directive D10-0045 

D.     If difficulties arise when planning transportation to medical appointments, The Medical Administrator and the transportation officer will work together to resolve the issue.

E.     The Health Services Administrator will maintain a log of missed appointments to determine if problems with transportation are impeding inmates' access to medical care.

III.    REPEALER:

This policy supersedes and rescinds all previous policies regarding this topic.

_____                    __10__/_17__/_06__
**Randy Morgan**                                          Date
**Chief of Detention**

2

Branch Directive D10-0046

**Office of the
Pulaski
County
Sheriff**

**BRANCH DIRECTIVE**

| | |
|---|---|
| Subject: INTAKE MEDICAL SCREENING | Effective Date: **02/10/03**<br>Revised: **10/09/06** |
| Distribution: **All Personnel**          Reference: N/A | Pages: **03** |
| Responsible Authority: **Chief of Detention** | |
| ARKANSAS STDS: **See Index** | |
| AR. STATUTE: **See Index** | |
| NCCHC: **See Index** | |
| ACA STANDARDS: **See Index** | |

I.    PURPOSE:    To establish guidelines for the development and implementation of a written intake medical screening to include inquiry, observation and medical disposition of the inmate.

II.    POLICY:

A.    The written policy, procedure and practice of the Pulaski County Regional Detention Facility will require that a medical, dental, and mental health screening is performed by qualified health care personnel on all inmates received at the facility.

B.    All findings will be recorded on a form approved by the health authority.

C.    Tests results, particularly for Tuberculosis (TB) will be received and evaluated.

III.    PROCEDURES:

A.    Receiving Screening (Medical Intake Screening)

1.    Receiving Screenings will be performed by qualified health care personnel on all inmates upon their arrival at the facility before the intake process is completed and reviewed by the Intake Supervisor.

Branch Directive D10-0046 

2.   In accordance with the Rules and Regulations of the Arkansas State Board of Health pertaining to the Control of Communicable Diseases all inmates who are expected to be incarcerated for fourteen (14) days or more will receive tuberculosis screening and will also receive tuberculosis prevention instructions.

3.   All findings are recorded on a form approved by the health authority and will include at least the following:

    a.   Inquiry into:

        1)   current illness and health problems, including venereal diseases and other infectious diseases, i.e. tuberculosis
        2)   dental problems
        3)   mental health problems
        4)   allergies
        5)   medications taken and special health (including dietary) requirements
        6)   for women, current gynecological problems and pregnancy
        7)   use of alcohol and other drugs, including type(s) of drugs used, mode of use, amounts used, frequency used, date and time of last use, and history of any problems that may have occurred after ceasing use (e.g., convulsions)
        8)   past and present treatment of hospitalization for mental disturbance or suicide
        9)   other health problems designated by the responsible physician

    b.   Observation of:

        1)   behavior, including state of consciousness, mental status, appearance, conduct, tremor, and sweating
        2)   body deformities, ease of movement, etc.
        3)   persistent cough or lethargy; and, condition of skin, including trauma markings, bruises, lesions, jaundice, rashes and infestations, and needle marks or other indications of drug abuse

    c.   Medical disposition of inmate:

        1)   general population OR
        2)   general population with prompt referral to appropriate health care service OR

2

3)    referral to appropriate health care service for emergency treatment

4)    documentation of the date and time when referral/placement actually takes place

4.    Whenever an inmate refuses his/her medical screening during the intake process, the nurse on duty will notify an intake deputy.

5.    The intake deputy will give the inmate a direct order to accomplish the medical screening.

    a.    If the inmate still refuses he/she will be placed in Administrative Segregation on isolation and disciplinary charges will be filed.

6.    The intake nurse will accomplish a visual inspection of the inmate and document any observations.

7.    Whenever an inmate refuses to complete the receiving medical screening a court order will be obtained to have the inmate comply with the Tuberculosis (TB) testing.

**IV.   REPEALER:**

This policy supersedes and rescinds all previous policies regarding this topic.

_____
**Randy Morgan**
**Chief of Detention**

__10__/_17__/_06__
**Date**

3

| Office of the Pulaski County Sheriff | Branch Directive D10-0048 |
|---|---|
| | BRANCH DIRECTIVE |

| Subject: MEDICAL COMMUNICATIONS WITH THE PUBLIC | Effective Date: 02/20/04 Revised: 10/09/06 |
|---|---|
| Distribution: All Personnel    Reference: N/A | Pages: 03 |
| Responsible Authority: Chief of Detention | |
| ARKANSAS STDS: See Index AR. STATUTE: See Index NCCHC: See Index ACA STANDARDS: See Index | |

I.   PURPOSE:

To ensure that all communications with the public concerning the inmate population of the Regional Detention Facility be limited to a known and trusted source which minimizes the possibility of improper, inappropriate, inaccurate, or illegal medical information being provided to anyone concerning inmates.

II.   POLICY:

A.   Only the Medical Administrator or the Medical Director are authorized to provide inmate medical information to any member of the public.

1.   In the event neither is available, a member of the Medical Department will be designated to fulfill this function as needed.

B.   The moment any calls or contacts from the public concerning either requested or provided inmate medical and / or medication information are identified as such, the call will be dealt with in strict accordance with the steps delineated within this Branch Directive.

1



**III.   PROCEDURES:**

A.   <u>Outgoing calls concerning inmates:</u>

1.   Only the Medical Administrator or the Medical Director are authorized to provide inmate medical information to any member of the public.

2.   In the event neither is available, a member of the Medical Department will be designated to fulfill this function as needed.

B.   <u>Incoming calls concerning inmates:</u>

1.   Special Medications and / or Conditions:

a.   Any member who receives a call from a member of the public concerning medications taken by an inmate or special medical conditions of an inmate will immediately:

1)   Inform the person calling that the information they are providing must go to the Medical Administrator.

2)   Forward the call to the Medical Administrator if during business hours, or to the Medical Administrator's office phone at any other time.

3)   The Medical Administrator will be responsible for checking these messages on a frequent and regular basis, and acting on the information, as necessary.

b.   <u>Emergencies:</u>

1)   As is always the case, emergency information will be addressed immediately by contacting the Medical Administrator's cell phone, then the Medical Director's Medical Exchange.

2.   Calls for Medical Information about an inmate:

a.   Only the Medical Administrator or Medical Director are authorized to provide inmate medical information to any member of the public.

Branch Directive D10-0048

    b.      All other members receiving requests for medical information concerning an inmate will immediately put the caller in contact with the ranking medical authority available at the moment.

            1)      The medical authority will address the call in accordance with this Directive.

## IV.   REPEALER:

This policy supersedes and rescinds all previous policies regarding this topic.

_____            \_\_10\_\_/\_17\_\_/\_06\_\_
**Randy Morgan**                                    Date
**Chief of Detention**

| | |
|---|---|
| **Office of the Pulaski County Sheriff** | Branch Directive D11-0005 |

<div align="center">

**BRANCH DIRECTIVE**

</div>

| Subject: **DEATH, SUICIDE OR ATTEMPTED SUICIDE** | Effective Date: **09/17/99** Revised: **12/27/02** **10/09/06** |
|---|---|
| Distribution: **All Personnel**        Reference: N/A | Pages: **04** |
| Responsible Authority: **Chief of Detention** | |
| ARKANSAS STDS: See Index | |
| AR. STATUTE: See Index | |
| ACA STANDARDS: See Index | |

**I.    PURPOSE:**   To establish procedures for the prompt response and reaction to a suicide, attempted suicide or death of any inmate while he/she is confined to the facility.

**II.   POLICY:**   All Pulaski County Regional Detention Facility officers will be trained in emergency first aid and CPR in order to effectively respond to any health care emergency.

Should an inmate attempt to commit suicide or appear to be suffering from a life-threatening condition, facility staff will be expected to respond in the appropriate manner.

**III.   PROCEDURES:**

A.   All deputies will be trained in the signs and symptoms of persons posing a suicide risk and as to the prevention and referral techniques to be followed should a person exhibit such signs and/or symptoms.

   1.   Training will be provided by qualified Medical Division Personnel.

   2.   Training will be documented pursuant to the procedures outlined in Policy D01-0004, "Employee Training Standards."

1

Branch Directive D11-0005

B. **Procedures to be Followed Upon Discovery of an Attempted Suicide or Inmate Death:**

1. In the event a deputy discovers an inmate who appears to be dead or has attempted to commit suicide; the following procedures will be enacted immediately:

   a. The deputy discovering the inmate will immediately notify Central Control deputies and advise them that a Code Red exists.

      1) Central Control will immediately contact health care staff to respond to the emergency.

   b. The deputy will ensure that all inmates in the surrounding area are secured and will initiate emergency first aid procedures until such time that the health care personnel arrive on the scene.

   c. Once health care personnel arrive on the scene, they will be responsible for providing care to the inmate.

      1) Deputies will only assist health care personnel if requested.

   d. **Every effort will be made by those responding to the emergency to preserve the scene for investigation purposes, if necessary.**

      1) Any disturbance of the scene attributable to health care or detention personnel will be noted in an incident or supplemental report to be completed by each deputy involved in the incident.

   e. Should the inmate be declared dead, the deputies responding to the emergency will preserve the scene for investigative purposes.

   f. In the event that an inmate is resuscitated, health care personnel will be responsible for initiating emergency health care procedures as outlined in Policy D04-0003, "Transportation of Inmates for Emergency and Routine Health Care."

C. **Post-Event Procedures (Inmate Death):**

   The following procedures will take effect should health care personnel declare an inmate dead at the scene:

2

Branch Directive D11-0005

1. The Watch Commander will be immediately notified.

2. The Watch Commander will immediately contact the Security Division Commander.

3. The Watch Commander will notify Investigations through the Communications Division and request they contact the Coroner.

**** Note: The Coroner must wait for Investigations before they can enter the crime scene. ****

4. The Watch Commander will ensure the Intake Supervisor prepares five (5) packets (i.e. – intake sheet, picture, all other relevant documentation) to be sent to Central Control for dissemination to:

   a. Watch Commander
   b. Security Division Commander
   c. Chief of Detention
   d. Coroner
   e. Medical Administrator

5. The Medical Division will release a medical packet to the Coroner.

6. Investigations personnel will conduct all interviews concerning the incident.

7. Upon arrival of Investigations personnel, they will take control of the scene.

8. Copies of all incident reports shall be forwarded through the chain of command to the Chief of Detention.

   a. The Chief of Detention will forward the reports to the Sheriff for information and to Investigation officials for investigation.

9. Copies of all incident reports will be forwarded to the records clerk for filing in the inmate's book-in record.

D. **Notification of Next of Kin:**

1. Investigations will be responsible for notification of the next of kin.

3

Branch Directive D11-0005 

    a.    Incidents involving the death, attempted or successful suicide of any Federal inmate will require Investigations to notify the U.S. Marshall **prior** to notification of next of kin.

## IV.   REPEALER:

This policy supersedes and rescinds all previous policies regarding this topic.

_____
**Randy Morgan**
**Chief of Detention**

              __10__/_17__/_06__
              Date

4

Branch Directive D11-0008

**Office of the
Pulaski
County
Sheriff**                          BRANCH DIRECTIVE

| Subject: INMATE HUNGER STRIKE | Effective Date: **11/20/01**<br>Revised: **10/09/06** |
|---|---|
| Distribution: **All Personnel**          Reference: N/A | Pages: **03** |
| Responsible Authority: **Chief of Detention** | |
| ARKANSAS STDS: See Index<br><br>AR. STATUTE: See Index<br><br>ACA STANDARDS: See Index | |

I.     PURPOSE:     To establish procedures for the prompt response and reaction to a suspected, implied or confirmed hunger strike by any inmate while he/she is confined to the facility.

II.     POLICY:     All Pulaski County Regional Detention Facility members respond to any suspected, implied or confirmed inmate hunger strike by treating it as a potential health care emergency. Should an inmate confirm or appear to appear to be engaging in a hunger strike, facility staff will be expected to respond in the appropriate manner.

III.     PROCEDURES

    A.     All deputies will monitor the inmates in their care with respect to the following:

        1.     Refusal of meals.
        2.     Uneaten meals.
        3.     Stated intent to engage in a hunger strike.

    B.     All Deputies will relay the information gathered or observed to medical staff so they can make a more informed assessment of the inmate.

    C.     **Procedures to be followed Upon an Inmate Declaring or Implying His / Her Intent to Engage in a Hunger Strike:**

        1.     In the event an inmate declares or implies this type of intent:

            a.     The deputy will immediately notify his/her supervisor.

1

Branch Directive D11-0008 

    b.    Record the information into the Unit Log.

    c.    Contact health care staff and inform them of the situation.

    d.    Complete an Incident Report Form.

    e.    Monitor the inmate regularly.

    f.    Start a meal consumption log.

        1)    Should the inmate eat any calorie containing liquids or foods he / she is not on a hunger strike.

        2)    The deputy will immediately notify his / her supervisor.

2.    Medical personnel will make contact with the inmate in a reasonable period of time and:

    a.    Initiate their company policy on Hunger Strike.

    b.    Verify and document the inmate's current physical condition.

    c.    Counsel the inmate on the dangers and health risks involved in a hunger strike.

    d.    Submit copies of all documentation to the on duty Watch Commander.

    e.    Monitor the inmate regularly.

D.    **Follow-Up Medical Procedures:**

1.    Medical personnel will determine if and when the inmate's condition warrants a greater level of intervention to ensure the welfare of the inmate.

E.    **Follow-Up Administrative Procedures:**

1.    When Medical Personnel determine more strenuous intervention is necessary to ensure the health and welfare of an inmate engaged in a hunger strike.

    a.    The Chief of Detention or Designee will be notified immediately.

2.    The Chief of Detention or Designee will make the determination to:




2

Branch Directive D11-0008

    a.    Seek judicial authorization for more active intervention.

    b.    Confer with Medical Staff to consider hospitalization.

**F.   Documentation Procedures:**

    1.    Copies of all incident reports shall be forwarded through the chain of command to the Chief of Detention. The Chief of Detention will forward the reports to the Sheriff for information and to Investigation officials for investigation.

    2.    Copies of all incident reports will be forwarded to the records clerk for filing in the inmate's book-in record.

**IV.  REPEALER:**

**This policy supersedes and rescinds all previous policies regarding this topic.**

_____      __10__/_17__/_06__
**Randy Morgan**          Date
**Chief of Detention**

3